# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2341-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Mark Alan Ruppelt, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>            Complainant,<br>        v.<br>Mark Alan Ruppelt,<br>            Respondent. |

---

DISCIPLINARY PROCEEDINGS AGAINST RUPPELT

---

| | |
|---|---|
| OPINION FILED: | July 8, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

---

ATTORNEYS:

**2014 WI 53**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012AP2341-D

STATE OF WISCONSIN             :    IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Mark Alan Ruppelt, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant,**

    **v.**

**Mark Alan Ruppelt,**

        **Respondent.**

**FILED**

**JUL 8, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*

¶1   PER CURIAM.   We review a report and recommendation of Referee Richard C. Ninneman approving the Stipulation and No Contest Plea filed by the Office of Lawyer Regulation (OLR) and Attorney Mark Alan Ruppelt.[1]   In the stipulation, Attorney Ruppelt pled no contest to three counts of misconduct

---

[1] In the documents filed in this matter, the spelling of Attorney Ruppelt's middle name varies.  We note that his name as listed with the State Bar of Wisconsin is "Mark Alan Ruppelt," and we therefore use that spelling throughout this opinion.

as alleged in the complaint filed by the OLR. The OLR voluntarily dismissed Count Four of the complaint. The parties jointly recommended that the sanction imposed be a public reprimand. The referee approved the stipulation and recommended that this court publicly reprimand Attorney Ruppelt. Attorney Ruppelt filed a timely objection to the OLR's statement of costs, which sought costs of $18,443.05. The referee's amended recommendation as to the assessment of costs was that the requested fees for retained counsel be reduced by 50 percent, which would reduce the costs assessed against Attorney Ruppelt to $9,990.55.

¶2 After carefully reviewing the matter, we uphold the referee's findings of fact and conclusions of law. We agree with the referee that a public reprimand is an appropriate sanction. We also agree with the referee that it is appropriate to reduce the costs of this proceeding to $9,990.55.

¶3 Attorney Ruppelt was admitted to practice law in Wisconsin in 1994 and practices in Milwaukee. He was previously a partner in the law firm of Gatzke & Ruppelt SC (the Firm), located in Waukesha County.

¶4 In 2007, T.W. retained the Firm to represent her in two legal matters. The first was a civil claim against a former teacher and his employer based on the teacher's alleged sexual assaults of T.W. when she was a student at the school.[2] The

---

[2] According to the Wisconsin Court System Circuit Court Access web site, T.W. was born in 1980, which means she was 27 years old when she retained the Firm to represent her in the two legal matters.

other matter was to assist T.W. as a victim/witness in the criminal case pending against the teacher. Prior to undertaking representation of T.W., Attorney Ruppelt had not had a sexual relationship with her.

¶5 Attorney Ruppelt attempted without success to settle T.W.'s civil claims against the former teacher and the school. In March of 2008, Attorney Ruppelt filed a lawsuit against the former teacher and the school. From March 2008 through February 2009, Attorney Ruppelt filed numerous pleadings on T.W.'s behalf in the civil case and appeared at hearings and scheduling conferences. In August of 2008, Attorney Ruppelt appeared as counsel of record for T.W. at the former teacher's sentencing hearing in the criminal case.

¶6 In April of 2009, while the civil and criminal cases were still pending, Attorney Ruppelt and T.W. began a sexual relationship. In mid-April 2009, the Firm became aware that Attorney Ruppelt may have been engaging in a sexual relationship with T.W. while representing her. Attorney Ruppelt continued to represent T.W. until he and the Firm determined he could no longer do so, given the concerns surrounding the nature of his relationship with T.W.

¶7 On April 19, 2009, Attorney Ruppelt met with Attorney James Gatzke, and Paul Bucher, another senior attorney at the law firm, to discuss the Firm's concerns about Attorney Ruppelt's relationship with T.W. At the meeting, Attorney Ruppelt falsely represented to Attorneys Gatzke and Bucher that he had not received or exchanged any texts, e-mail,

or voicemail messages of any kind with T.W. that were of a personal nature and unrelated to the law firm's representation of T.W. in her civil and criminal cases. In fact, Attorney Ruppelt had received an e-mail from T.W. on April 17, 2009, that was of a personal nature. At the April 19 meeting, Attorney Ruppelt falsely represented that he had not engaged in a sexual relationship with T.W. while representing her. Attorney Ruppelt agreed not to have contact with T.W. following the April 19 meeting. On several occasions after April 19, 2009, Attorney Ruppelt denied to Attorney Gatzke that he was involved in a romantic relationship with T.W.

¶8 In May or June of 2009, Attorney Ruppelt acknowledged to Attorney Gatzke that he was engaging in a sexual relationship with T.W. at that time.

¶9 On October 15, 2009, the OLR sent Attorney Ruppelt a letter notifying him of its pending investigation regarding his relationship with T.W. while representing her. In late October 2009, Attorney Ruppelt responded to the grievance and falsely indicated that his representation of T.W. was limited to assisting her in drafting a victim impact statement. His response stated that Attorney Gatzke was lead counsel in the civil case and that Attorney Ruppelt only filled in when needed. The response also falsely represented that Attorney Ruppelt had not engaged in sexual relations with T.W. at a time when his law firm was representing her in the civil case. Attorney Ruppelt further falsely represented that T.W.'s e-mail of April 17, 2009 was unsolicited and not responded to by him.

4

¶10 The OLR directed Attorney Ruppelt to provide a more complete response. Attorney Ruppelt and an OLR investigator had a telephone conference on October 30, 2009. During the telephone conference, Attorney Ruppelt falsely represented that the April 17, 2009 e-mail was "all fabrication." He again falsely represented that his representation of T.W. was limited to assisting her in drafting a victim impact statement in the criminal case. He also falsely represented to the OLR investigator that Attorney Gatzke was lead counsel in the civil case and that Attorney Ruppelt only filled in when needed.

¶11 On November 13, 2009, Attorney Ruppelt filed a supplemental response to the OLR's inquiry. The supplemental response falsely represented that Attorney Ruppelt had not begun a sexual relationship with T.W. until June 27, 2009, and thus had not had a sexual relationship with her at any time while representing her on behalf of his law firm. The supplemental response also falsely represented that Attorney Gatzke and Attorney Ruppelt had decided Attorney Ruppelt's contact with T.W. should cease because she had sent Attorney Ruppelt an unsolicited e-mail alluding to inappropriate contact that he denied. The supplemental response also falsely represented that Attorney Ruppelt had told Attorney Gatzke about T.W.'s April 17, 2009 e-mail and asserted that the decision to remove himself from T.W.'s legal matters was made between him and Attorney Gatzke, without mentioning Attorney Bucher or the Firm's investigation.

5

¶12 On April 20, 2009, as part of the Firm's investigation of Attorney Ruppelt's relationship with T.W., Attorney Bucher met with T.W. During the meeting, T.W. denied that she and Attorney Ruppelt had engaged in a sexual relationship while he was representing her on behalf of the Firm. T.W. subsequently had a telephone conference with an OLR investigator. During the telephone conference T.W. denied that Attorney Ruppelt had had a sexual relationship with her during the period of time he was representing her on behalf of the Firm. She also denied sending the April 17, 2009 e-mail.

¶13 Attorney Ruppelt and T.W. were married in June 2010. On October 26, 2012, the OLR filed a complaint against Attorney Ruppelt alleging four counts of misconduct:

> [COUNT ONE] By engaging in sexual relations with [T.W.] while he was representing her in [civil and criminal cases], when they had not engaged in a consensual sexual relationship prior to the commencement of the attorney-client relationship, [Attorney] Ruppelt violated SCR 20:1.8(j).[3]
>
> [COUNT TWO] By providing false information to his Firm regarding the nature and timing of his relationship with [T.W.], by failing to disclose information to his Firm regarding the nature and timing of his relationship with [T.W.], and by engaging in a course of conduct to conceal from his Firm the nature and timing of his relationship with

---

[3] SCR 20:1.8(j) states, "A lawyer shall not have sexual relations with a current client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."

6

[T.W.], [Attorney] Ruppelt violated SCR 20:8.4(f)[4] and Disciplinary Proceedings Against Shea, 190 Wis. 2d 560, [527] N.W.2d [314] (1995).[5]

[COUNT THREE] By providing false information to OLR and failing to provide relevant information to OLR regarding the scope and time of his representation of [T.W.], and/or by providing false information to OLR and failing to provide relevant information to OLR regarding the nature and timing of his relationship with [T.W.], and/or by providing false information to OLR and failing to provide relevant information to OLR regarding his Firm's investigation of his relationship with [T.W.], [Attorney] Ruppelt violated

---

[4] SCR 20:8.4(f) states it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

[5] The Shea court found an attorney's pattern of conduct "constituted a breach of his fiduciary duty to his law firm and his duty of honesty in his professional dealings with it."

SCR [22.03(2)][6] and SCR 22.03(6),[7] enforced via SCR 20:8.4(h).[8]

[COUNT FOUR] By assisting or inducing [T.W.] to provide false information to OLR and to withhold relevant information from OLR regarding the nature and timing of [Attorney] Ruppelt's relationship with [T.W.], and/or by assisting or inducing [T.W.] to provide false information to OLR and to withhold relevant information from OLR regarding [Attorney] Ruppelt's Firm's investigation of the nature and timing of [Attorney] Ruppelt's relationship with [T.W.], and/or by assisting and inducing [T.W.] to provide false information to OLR and to withhold relevant information from OLR regarding [T.W.]'s knowledge of events relevant to OLR's investigation, and/or by failing to advise OLR that [T.W.] had provided or intended to provide false information to

---

[6] SCR 22.03(2) states as follows:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[7] SCR 22.03(6) provides as follows: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[8] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

OLR and had withheld or intended to withhold relevant information from OLR, [Attorney] Ruppelt violated SCR 22.03(6), enforced via SCR 20:8.4(h) and SCR 20:8.4(a).[9]

¶14 The complaint sought a 60-day suspension of Attorney Ruppelt's license to practice law in Wisconsin. Attorney Ruppelt filed an answer to the complaint on November 13, 2012. Following the recusal of one referee and a motion for substitution of second referee, Referee Ninneman was appointed on April 16, 2013.

¶15 The matter was set for a hearing that was scheduled to commence on September 16, 2013. Prior to the hearing, the parties entered into a stipulation, which was filed on September 19, 2013. The parties stipulated that the OLR would voluntarily dismiss Count Four of its complaint. Attorney Ruppelt agreed to plead no contest to Counts One, Two, and Three of the complaint and agreed that the referee could use the allegations of the complaint as an adequate factual basis in the record for a determination of misconduct as to those counts. The parties jointly recommended that the sanction imposed be a public reprimand.

¶16 On October 9, 2013, the referee issued his report and recommendation. Based on the stipulation, the referee found by clear, satisfactory, and convincing evidence that Attorney Ruppelt violated the supreme court rules as alleged in

---

[9] SCR 20:8.4(a) states that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . ."

9

Counts One, Two, and Three of the complaint. The referee also recommended that this court publicly reprimand Attorney Ruppelt for his disciplinary violations.

¶17 The OLR filed its statement of costs on October 29, 2013. The OLR sought costs and disbursements of $18,443.05. The OLR noted that its complaint alleged four counts of misconduct and, as part of the stipulation, the OLR agreed to dismiss Count Four. The OLR also noted that while it initially sought a 60-day suspension of Attorney Ruppelt's license, after Count Four was dismissed the OLR revisited its sanction recommendation and the OLR director determined that a public reprimand was an appropriate sanction. The OLR said that Attorney Ruppelt was uncooperative in part with the OLR's investigation. The OLR also said:

> Although the litigation was ultimately resolved by stipulation short of a hearing, this stipulation did not occur until after the case had been pending almost a year. Discovery, including depositions was extensive. Attorney Ruppelt's discovery requests were onerous and resulted in OLR's expenditure of a tremendous amount of time (the majority of which was internal staff time and not even charged herein to Attorney Ruppelt). Counsel costs herein are substantial but were paid out by OLR as reasonable and necessarily incurred.

¶18 Attorney Ruppelt filed an objection to the OLR's statement of costs on November 19, 2013. Attorney Ruppelt asserts that he was in fact cooperative and proposed to enter into a stipulation that was ultimately adopted after thousands of dollars in costs were incurred by the OLR, primarily through retained counsel's legal fees of nearly $17,000.

10

¶19 Attorney Ruppelt said that on January 14, 2013, his counsel sent a letter to the OLR offering to discuss the case before either side invested a significant amount of time and money. Attorney Ruppelt said:

Respondent explained in the January 14 letter that his lack of complete candor was an effort to protect [T.W.] as opposed to any desire to mislead OLR. While recognizing that being a gentleman and consideration of [T.W.'s] personal interests didn't excuse a failure to be candid with OLR, respondent requested that failure be put in proper context. . . .

This was not an attempt to save respondent or to hide improper conduct from others; it was motivated by a desire to protect a woman for whom respondent had, at that point, extremely strong feelings, evidenced by the fact that they [have] since married and have had children together. It was in that context that respondent suggested that his actions should be viewed as a less serious offense warranting less serious discipline than a failure to cooperate or respond candidly would under other circumstances.

¶20 Attorney Ruppelt notes that while the OLR seeks counsel fees and disbursements of $16,926.09, the fees charged by Attorney Ruppelt's counsel from the time the OLR filed its complaint in October of 2012 through the time the stipulation was entered into total only $6,150. Attorney Ruppelt suggests that any award of costs made should be in an amount not greater than the fees Attorney Ruppelt himself has been charged.

¶21 The OLR replied to Attorney Ruppelt's objection to costs on November 21, 2013, and said it stands by its original costs statement.

¶22 The referee issued his amended recommendation as to the assessment of reasonable costs on December 9, 2013. The

11

referee stated that this was not a complicated case involving multiple client matters, nor was this a case involving extensive discovery. The referee said he was troubled by the fact that retained counsel spent 33.7 hours reviewing the OLR's investigative file and drafting the complaint, which was more than the 27.33 hours that Attorney Ruppelt's counsel spent defending the matter from the time of the filing to the time of the stipulation.

¶23 The referee said he was also troubled that retained counsel billed approximately 125 hours for discovery, which included responding to Attorney Ruppelt's request for production of documents and conducting two depositions, one by telephone, of Attorney Ruppelt's two former law partners/employers. The referee said, "[M]ost importantly, this referee is **very** troubled by the fact that the OLR's retained counsel billed 241.5 hours in this matter, resulting in $16,905 in total fees, when respondent's counsel was proposing some type of reprimand as opposed to a sixty-day suspension as early as January 14, 2013 as reflected in retained counsel's own billing records."

¶24 The referee recommends that the requested fees for outside counsel be reduced by 50 percent, making the recommended costs in this matter $9,990.55 as opposed to the requested costs of $18,443.05.

¶25 This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The

12

court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶26 We adopt the referee's findings of fact and conclusions of law that Attorney Ruppelt violated the supreme court rules as alleged in Counts One, Two, and Three of the OLR's complaint. We also agree with the referee that a public reprimand is an appropriate sanction for Attorney Ruppelt's misconduct.

¶27 We turn next to the issue of costs. Assessment of costs in OLR matters is governed by SCR 22.24. Our general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the OLR, upon the respondent. In some cases this court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. In exercising its discretion regarding the assessment of costs, the court will consider the statement of costs, any objection and reply, the recommendation of the referee, and all of the following factors: the number of counts charged, contested, and proven; the nature of the misconduct; the level of discipline sought by the parties and recommended by the referee; the respondent's cooperation with the disciplinary process; prior discipline, if any; and other relevant circumstances.

¶28 Upon consideration of the relevant factors and the submissions of the parties, we agree with the referee that it is appropriate in this case to reduce the amount of retained

counsel's fees by 50 percent. In making our determination on costs, we appreciate the referee's analysis. On balance, we find it appropriate to follow the referee's recommendation and reduce retained counsel's fees by 50 percent. Our determination is not the result of the application of a precise mathematical formula, but instead is based on our thorough consideration of the record, the manner in which this case developed, and the factors set forth in SCR 22.24(1m).

¶29 IT IS ORDERED that Mark Alan Ruppelt is publicly reprimanded for professional misconduct.

¶30 IT IS FURTHER ORDERED that within 60 days of the date of this order, Mark Alan Ruppelt shall pay to the Office of Lawyer Regulation the imposed costs of this proceeding, which are $9,990.55.

¶31 IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this decision.

¶32 ANN WALSH BRADLEY, J. *(dissenting)*. The discipline should be more than a public reprimand. Attorney Ruppelt not only violated SCR 20:1.8(j), but also violated SCR 20:8.4(h) and (f) by repeatedly misrepresenting the facts to his law firm and the OLR, as explicitly set forth in the opinion. Per curiam, ¶¶7, 9, 10, 11.

¶33 In addition, I would impose full costs. SCR 22.24(1m) states the court's "general policy [] that upon a finding of misconduct, it is appropriate to impose all costs." The rule then sets forth the factors to consider when determining whether to deviate from that general policy and reduce the costs.

¶34 Because the per curiam does not explain or evaluate how those factors apply in this case, there has been no showing that we should deviate from our general policy here.

¶35 I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.