# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2150-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Othman M. Atta, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>    Complainant,<br>    v.<br>Othman M. Atta,<br>    Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ATTA

| | |
|---|---|
| OPINION FILED: | July 14, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, A. W., J. and ABRAHAMSON, J. dissent (Opinion filed. |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2014AP2150-D

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings**
**Against Othman M. Atta, Attorney at Law:**


**Office of Lawyer Regulation,**

        **Complainant,**

    **v.**

**Othman M. Atta,**

        **Respondent.**

**FILED**

**JUL 14, 2016**

Diane M. Fremgen
Clerk of Supreme Court


ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*


¶1   PER CURIAM.   We review the report and recommendation of Referee James J. Winiarski approving the stipulation and no contest plea filed by the Office of Lawyer Regulation (OLR) and Attorney Othman M. Atta.   In the stipulation, Attorney Atta pled no contest to eight counts of misconduct as alleged in the complaint filed by the OLR.   The parties jointly recommended that the sanction imposed be a public reprimand.   The referee

agreed that a public reprimand was an appropriate sanction. The referee also recommended that Attorney Atta be ordered to pay the full costs of this disciplinary proceeding, which are $9,187.41 as of April 4, 2016.

¶2 After careful review of the matter, we uphold the referee's findings of fact and conclusions of law and agree that a public reprimand is an appropriate sanction. We further agree that Attorney Atta should bear the full costs of this disciplinary proceeding.

¶3 Attorney Atta was admitted to practice law in Wisconsin in 1994 and practices in Milwaukee. He has no prior disciplinary record.

¶4 On September 15, 2014, the OLR filed a complaint against Attorney Atta. Attorney Atta filed an answer on October 14, 2014. The referee was appointed on December 15, 2014. The parties' stipulation was filed on February 19, 2016. As part of the stipulation, Attorney Atta withdrew his answer to the complaint and pled no contest to the eight counts of misconduct alleged therein.

¶5 This matter arose out of Attorney Atta's representation of BA-B. In April of 2010, Attorney Atta agreed to represent her in a divorce action and also agreed to assist her in immigration matters involving her husband, AAN. Both BA-B and her husband were born in Jordan. In the spring of 2009, the couple had discussed the possibility of divorce and AAN had returned to Jordan, received a divorce decree there, and married another woman. In seeking Attorney Atta's assistance, BA-B

2

sought to protect herself, as well as her young daughter, from AAN's actions.

¶6 Beginning in September 2010, Attorney Atta's professional relationship with BA-B became increasingly personal, and the two had sexual relations. A consensual sexual relationship had not existed between them prior to the time their attorney-client relationship began. Between April 2012 and February 2013, Attorney Atta and BA-B had numerous telephone conversations, with a majority of the calls being lengthy and after midnight. In one telephone conversation, Attorney Atta told BA-B he had strong feelings for her, discussed one day being married to her, and discussed intimate topics. Attorney Atta went to BA-B's house for dinners. Attorney Atta, BA-B, and her young daughter would also go out for lunch or dinner together at local restaurants.

¶7 Attorney Atta's personal communications, interactions, and personal relationship with his client while he continued to represent her in her divorce action created a conflict of interest on Attorney Atta's part. In March 2013, near the end of the divorce proceeding, AAN accused Attorney Atta of having a romantic relationship with BA-B. On March 11, 2013, AAN's attorney emailed Attorney Atta expressing concern that his client was claiming Attorney Atta had some sort of relationship with AB-B. Attorney Atta responded to the email by denying that such a relationship existed and claimed that AAN and his new wife were spreading false rumors.

¶8  On March 12, 2013, the circuit court held a final, stipulated hearing in the divorce case.  Prior to the hearing, AAN's attorney met with Attorney Atta and the judge in chambers to discuss the concerns raised by AAN.  The court asked the parties to state their concerns on the record. AAN's attorney expressed concern that there was a romantic relationship between Attorney Atta and BA-B.  Attorney Atta responded by saying that the allegations were "entirely without merit" and he accused AAN and his new wife of "going around the community trying to badmouth me, badmouthing my client, alleging that we are sleeping together, alleging that my client is sleeping with other men, and so forth."  At the hearing, the circuit court accepted the terms of the stipulation on all issues, granted the divorce, and ordered Attorney Atta to submit proposed findings of fact, conclusions of law, and a judgment to the court within 30 days.

¶9  Attorney Atta and BA-B continued to speak after the divorce hearing, but by May 2013, their relationship had deteriorated.  By the end of May 2013, Attorney Atta had not yet filed the proposed findings of fact, conclusions of law, and judgment with the court. On May 24, 2013, BA-B sent Attorney Atta an email expressing concern that the final divorce papers had not yet been prepared.  On May 28, BA-B wrote to the court asking for assistance in having the paperwork completed.  On May 31, 2013, AAN's attorney emailed Attorney Atta asking him to advise of the status of the matter.  Attorney Atta did not respond for over two weeks.

4

¶10 On June 16, 2013, Attorney Atta responded to AAN's attorney's email, saying he would drop off the proposed documents the next day. On June 18, 2013, Attorney Atta forwarded his proposed findings of fact, conclusions of law, and judgment, apologizing for the delay. Attorney Atta emailed BA-B the proposed documents on July 1, explaining the changes made and advising her on outstanding issues, including past due child support and credit card debt. Without BA-B's consent, Attorney Atta copied his email, including the findings of fact, conclusions of law, and judgment, to his brother, Ihsan Atta. BA-B had met with and been in contact with Attorney Atta's brother. On July 1, 2013, after incorporating subsequent language changes proposed by both attorneys, Attorney Atta sent the final proposed documents to the court. The court signed the documents and submitted them for filing on July 16, 2013.

¶11 On August 8, 2013, BA-B filed a telephonic grievance against Attorney Atta, alleging that he intentionally delayed filing the divorce documents after she terminated their relationship. BA-B was also upset that Attorney Atta had copied his brother with the divorce papers, and she asserted that Attorney Atta had taken advantage of her by engaging in a sexual relationship with her while she was in an emotional stage in her life.

¶12 On October 5, 2013, the OLR sent Atta a formal notice of investigation asking him to respond to BA-B's allegations. Attorney Atta responded on December 16, 2013, claiming the allegations were completely false. He denied he and BA-B had a

5

sexual relationship and stated that BA-B wanted to marry him and told him if he did not agree to the marriage she would file false accusations against him. As to the late night phone calls, Attorney Atta said he regularly conducted business outside of regular business hours and he knew BA-B stayed up late. Attorney Atta admitted that he met BA-B for coffee, lunch, and dinner, but said he would do that with any client. On April 1, 2014, the OLR requested supplemental information from Attorney Atta regarding the grievance. Attorney Atta failed to timely respond.

¶13 The referee's March 15, 2016 report and recommendation found that the OLR met its burden of proof with respect to the following counts of misconduct:

> [Count One:] By representing [BA-B] during her divorce matter while simultaneously engaging in a romantic relationship with her, [Attorney] Atta violated SCR 20:1.7(a)(2).[1]
>
> [Count Two:] By failing to withdraw from representation of [BA-B] in a divorce proceeding following engagement in a romantic relationship with his client, giving rise to a conflict of interest, [Attorney] Atta violated SCR 20:1.16(a).[2]

---

[1] SCR 20:1.7(a)(2) provides: "Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer."

[2] SCR 20:1.16(a) provides: "Except as stated in par. (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct or other law . . . ."

[Count Three:]  By having sexual relations with a client while representing her in a divorce action, when no sexual relationship existed prior to the representation, [Attorney] Atta violated SCR 20:1.8(j).[3]

[Count Four:]  By failing to inform the tribunal in a divorce proceeding of the fact of his relationship with [BA-B] and falsely denying such a relationship existed, [Attorney] Atta violated SCR 20:3.3(a)(1).[4]

[Count Five:]  By informing [AAN's attorney] that he did not have a romantic relationship with [BA-B], after [AAN's attorney] specifically asked [Attorney] Atta whether he had a romantic relationship (both in email correspondence and in a meeting with the presiding judge, Atta violated SCR 20:4.1(a)(1).[5]

[Count Six:]  By emailing the proposed Findings of Fact, Conclusions of Law, and Judgment to [Attorney Atta's brother], along with other information pertaining to the representation of [BA-B], without [BA-B's] consent, [Attorney] Atta violated SCR 20:1.6(a).[6]

---

[3] SCR 20:1.8(j) provides: "A lawyer shall not have sexual relations with a current client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."

[4] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[5] SCR 20:4.1(a)(1) provides: "In the course of representing a client a lawyer shall not knowingly:  (1) make a false statement of material fact or law to a 3rd person . . . ."

[6] SCR 20:1.6(a) provides:  "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in pars. (b) and (c)."

7

> [Count Seven:] By failing to provide truthful information to OLR in connection with an investigation, and specifically denying the existence of a romantic relationship with his client, [Attorney] Atta violated SCR 22.03(2) and SCR 22.03(6), enforced via SCR 20:8.4(h).[7]

> [Count Eight:] By failing to timely respond to OLR's April 1, 2014 request for supplemental information, Atta violated SCR 22.03(6), enforced via 20:8.4(h).

¶14 The referee noted that before the parties reached a stipulation, BA-B filed a civil suit against Attorney Atta in Milwaukee County Circuit Court alleging a sexually inappropriate relationship between her and Attorney Atta while he was representing her in her divorce action. The referee also noted that he did not have the opportunity to meet or hear from Attorney Atta during the course of this case, and the referee's report and recommendation were based entirely on the written file and the parties' stipulation and Attorney Atta's no contest plea.

¶15 The referee found it significant that Attorney Atta denied having any sexual or inappropriate contact with BA-B until the no contest plea and stipulation were entered. The referee noted that Attorney Atta denied the allegations during the course of the OLR's investigation of the grievance; in open

---

[7] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to . . . (h) fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), 22.03(6) or SCR 22.04(1) . . . ."

court during his representation of the grievant in the divorce case; in his answer to the OLR's complaint; and to opposing counsel during the course of the divorce action.

¶16 The referee went on to say that Attorney Atta's admitted misconduct was not limited to an inappropriate sexual relationship with a client. The referee said Attorney Atta also admitted that the relationship with his client gave rise to a conflict of interest, and he admitted failing to inform the tribunal in the divorce proceeding about his relationship with BA-B. Further, Attorney Atta admitted he was not truthful when asked by opposing counsel in the divorce case as to whether he was involved in an inappropriate relationship with BA-B. Attorney Atta also mailed copies of the proposed divorce documents to his brother without the permission of the grievant, and he failed to cooperate and be truthful with the OLR during the course of its investigation. The referee said although the relationship with BA-B was apparently mutual for an extended period of time, Attorney Atta should have recognized that he could not provide objective legal services and advice to BA-B when their relationship had become so personal in nature.

¶17 The referee went on to note that Attorney Atta did ultimately agree to the no contest plea and the factual basis for it. The referee further noted that Attorney Atta has no prior disciplinary history in his over 20 years of practicing law. The referee said public reprimands have been imposed for inappropriate sexual relationships with clients, and some attorneys have even received private reprimands for having

9

sexual relationships with their clients. After review of prior cases and factoring in both aggravating and mitigating factors, the referee recommended that Attorney Atta be publicly reprimanded and that he pay the full costs of the proceeding.

¶18 This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686.

¶19 We adopt the referee's findings of fact and conclusions of law that Attorney Atta violated the supreme court rules as alleged in the eight counts set forth above. We also agree with the referee that a public reprimand is an appropriate sanction for Attorney Atta's misconduct. We note that the misconduct at issue in this case is similar to that in In re Disciplinary Proceedings Against Ruppelt, 2014 WI 53, 354 Wis. 2d 738, 850 N.W.2d 1. Like Attorney Atta, Attorney Ruppelt began a sexual relationship with a client during the course of representing her. Like Attorney Atta, Attorney Ruppelt falsely denied that he was involved in a romantic relationship with his client, both when confronted by his partners and in his initial responses to the OLR's investigation. As in this case, Attorney Ruppelt ultimately entered into a stipulation and no contest plea whereby he admitted the misconduct. As in Ruppelt, we

10

conclude that a public reprimand is an appropriate sanction.  We further agree with the referee that Attorney Atta should bear the full costs of this proceeding.

¶20  IT IS ORDERED that Othman M. Atta is publicly reprimanded for professional misconduct.

¶21  IT IS FURTHER ORDERED that within 60 days of the date of this order, Othman M. Atta shall pay the Office of Lawyer Regulation the costs of this proceeding, which are $9,187.41.

¶22  IT IS FURTHER ORDERED that the Director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this decision.

¶23 ANN WALSH BRADLEY, J. *(dissenting).* Attorney Othman M. Atta entered into a stipulation which provides he is not contesting the eight counts of misconduct. The misconduct centers on Attorney Atta's consensual sexual involvement with a client that arose during the course of the representation in divorce and immigration matters. The underpinnings of this prohibition are rooted in concerns about conflicts of interest and breach of fiduciary rules. Such concerns address the essence of the professional relationship.

¶24 Truth telling also lies at the heart of the profession——especially truth telling to a tribunal. Attorney Atta's misconduct included making false statements to a tribunal by advising the circuit court that the allegations of a romantic relationship with his client were "entirely without merit" in violation of SCR 20:3.3(a)(1). Additionally his misconduct includes making false statements to the Office of Lawyer Regulation in violation of SCR 22.03(6), and to opposing counsel in violation of SCR 20:4.1(a)(1).

¶25 I have written in the past, and I do again today, because the court appears to be too lenient for violations of this nature that undermine the trust relationship and truthfulness required of an attorney. See In re Disciplinary Proceedings Against Ruppelt, 2014 WI 53, ¶32, 354 Wis. 2d 738, 850 N.W.2d 1 (Ann Walsh Bradley, J., dissenting).

¶26 Because I conclude that the violations warrant more than a public reprimand, I respectfully dissent.

1

¶27 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.