2017 WI 80

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP89-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Mark Alan Ruppelt, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, |
| |         Complainant-Respondent, |
| |    v. |
| | Mark Alan Ruppelt, |
| |         Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST RUPPELT

| | |
|---|---|
| OPINION FILED: | July 7, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 15, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, J. concurs (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs filed by *Terry E. Johnson* and *Peterson, Johnson & Murray, S.C.*, Milwaukee, and oral argument by *Terry E. Johnson.*

For the complainant-respondent, there was a brief filed by *Paul W. Schwarzenbart* and *Office of Lawyer Regulation*, Madison, and oral argument by *Paul W. Schwarzenbart.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2015AP89-D

STATE OF WISCONSIN              :       IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Mark Alan Ruppelt, Attorney at Law:**


**Office of Lawyer Regulation,**                    **FILED**

       **Complainant-Respondent,**              **JUL 7, 2017**

   **v.**
                                          Diane M. Fremgen
**Mark Alan Ruppelt,**                       Clerk of Supreme Court

       **Respondent-Appellant.**

---

ATTORNEY disciplinary proceeding.  *Attorney's license suspended.*


¶1  PER CURIAM.  This disciplinary matter comes to the court on Attorney Ruppelt's appeal of a report and recommendation of Referee James J. Winiarski.  The referee based his report on a stipulation between Attorney Ruppelt and the Office of Lawyer Regulation (OLR), in which Attorney Ruppelt admitted 16 counts of misconduct and agreed that his Wisconsin law license should be suspended for one year.  In his report, the referee recommended a slightly longer suspension than what

the parties had agreed upon: a 15-month suspension, rather than the parties' stipulated one-year suspension. Through his appeal, Attorney Ruppelt challenges the referee's 15-month suspension; he argues that it is excessive under our disciplinary case law, whereas the parties' stipulated one-year suspension is the appropriate length. Attorney Ruppelt also criticizes certain characterizations and findings by the referee, and proposes that this court should adopt a policy by which the court would give deference to parties' disciplinary stipulations.

¶2 When we review a referee's report and recommendation in an attorney disciplinary case, we affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶3 After reviewing this matter and considering Attorney Ruppelt's appeal, we accept the referee's factual findings and legal conclusions based on the parties' stipulation. We agree with the referee's recommendation that a 15-month suspension is appropriate, despite Attorney Ruppelt's arguments to the contrary. We also reject Attorney Ruppelt's remaining

arguments. Finally, we remand this matter to the referee for supplemental proceedings on the issue of restitution.

¶4 The OLR initiated this disciplinary proceeding with the filing of a five-count complaint, which it later amended in an 18-count complaint seeking a 15-month suspension. Attorney Ruppelt filed an answer in which he denied any professional misconduct. During the pre-hearing phase of this proceeding, the OLR dismissed two counts (Counts 15 and 16) due to evidentiary problems, leaving 16 counts to be resolved.

¶5 Shortly before the scheduled hearing in this matter, Attorney Ruppelt entered into a stipulation in which he admitted the remaining 16 counts of misconduct. Attorney Ruppelt and the OLR agreed to a one-year suspension.

¶6 The referee's report accepted the parties' stipulation and determined that the stipulated facts supported legal conclusions that Attorney Ruppelt had engaged in the remaining 16 counts of professional misconduct. The referee's factual findings and conclusions of law are described in the following paragraphs.

¶7 Attorney Ruppelt was admitted to the practice of law in this state in May 1994. He currently practices law in Milwaukee. Attorney Ruppelt has been the subject of professional discipline on one previous occasion: in 2014, this court publicly reprimanded him for engaging in improper sexual relations with a client and providing false information to his employer and the OLR regarding the nature and timing of his relationship with the client. See In re Disciplinary

3

*Proceedings Against Ruppelt*, 2014 WI 53, 354 Wis. 2d 738, 850 N.W.2d 1.

¶8 In the instant case, Attorney Ruppelt's actions fall into two broad categories of misconduct, both of which involve the same client, S.J. The first category of misconduct concerns Attorney Ruppelt's conversion of $50,000 of trust account funds to his own use, though he later repaid that amount. The second category of misconduct generally concerns Attorney Ruppelt's additional trust fund improprieties; his dishonest billing practices; his efforts to conceal his misconduct from opposing counsel, the circuit court, and the OLR; and his failure to reasonably consult with S.J.

### Misuse of $50,000 (Counts 1-5)

¶9 Attorney Ruppelt practiced law as a shareholder in a small law firm with one other shareholder.

¶10 In approximately July 2006, S.J. hired the firm to represent him in a criminal matter involving a former girlfriend. About two years later, the firm began representing S.J. in a related civil action brought by his former girlfriend. Attorney Ruppelt was counsel of record for S.J. in both the criminal and civil cases. S.J.'s former girlfriend retained a lawyer to represent her in the civil action.

¶11 Between August 2006 and June 2008, at least $170,332.55 of S.J.'s funds were deposited into the firm's trust account, most of which, as directed by Attorney Ruppelt, were applied to pay the firm for fees and expenses for the representation of S.J. in his criminal and civil cases.

4

¶12 In approximately May 2007, Attorney Ruppelt needed money in connection with his and his then-wife's purchase of a home. Attorney Ruppelt and the firm's other shareholder agreed that the firm would loan $50,000 to Attorney Ruppelt for that purpose. Attorney Ruppelt directed the firm's office manager to disburse $50,000 from the firm's trust account to the firm; to attribute that payment to the S.J. matter; and to then disburse that $50,000 to him. About three months later, Attorney Ruppelt directed the office manager to deposit $50,000 of his own personal funds to the firm's trust account. During the course of the OLR investigation, Attorney Ruppelt provided testimony under oath that the $50,000 trust account disbursement was for legal fees earned by the firm in S.J.'s criminal and civil cases. This testimony was untrue.

¶13 The parties stipulated, and the referee agreed, that Attorney Ruppelt's actions described above constituted a violation of SCR 20:1.15(b)(1)[1] (Count 1); SCR 20:8.4(c)[2] (Counts

---

[1] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(b)(1) provided:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of client and 3rd parties paid to a lawyer or law firm in

(continued)

5

2 and 4); SCR 20:1.15(b)(3)[3] (Count 3); and SCR 22:03(6),[4] enforceable via SCR 20:8.4(h)[5] (Count 5).

### Other conduct (Counts 6-14, 17-18)[6]

¶14 As noted above, the remaining misconduct counts concern Attorney Ruppelt's additional trust fund improprieties; his dishonest billing practices; his efforts to conceal his misconduct from opposing counsel, the circuit court, and the OLR; and his failure to reasonably consult with S.J. The referee made the following findings and conclusions regarding these counts.

---

connection with a representation shall be deposited in one or more identifiable trust accounts.

[2] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] Former SCR 20:1.15(b)(3) provided: "No funds belonging to a lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[4] SCR 22:03(6) provides: "In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[5] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

[6] As stated above, the parties stipulated to the dismissal of Counts 15 and 16 due to insufficient evidence.

¶15 Between January 2007 and July 2008, Attorney Ruppelt caused the firm to disburse as much as $104,644.68 of S.J.'s funds held as advanced fees in the firm's trust account in excess of the amounts that had been earned by the firm on S.J.'s cases. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 20:1.15(b)(4)[7] and SCR 20:8.4(c) (Counts 6 and 7).

¶16 Between August 2006 and July 2008, Attorney Ruppelt also caused the firm to disburse as much as $134,446.88 in fees from S.J.'s funds in trust, without providing S.J. with written notice of the disbursements at least five business days before making them, and without identifying the balance of S.J.'s funds in trust following the withdrawal of those fees. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 20:1.15(g)(1)[8] (Count 8).

---

[7] Former SCR 20:1.15(b)(4) provided:

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[8] Former SCR 20:1.15(g)(1) provided:

At least 5 business days before the date on which a disbursement is made from a trust account for the purpose of paying fees, with the exception of contingent fees or fees paid pursuant to court order, the lawyer shall transmit to the client in writing all of the following:

(continued)

¶17 In 2008, Attorney Ruppelt used a general durable power of attorney from S.J. to liquidate S.J.'s life insurance policy without consulting with S.J. Attorney Ruppelt then deposited an $18,779.51 check payable from the life insurance company to S.J. in the firm's trust account, endorsing the check using S.J.'s power of attorney. The deposit of funds from the insurance company does not appear in S.J.'s client ledger. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 20:1.4(a)(2)[9] (Count 9).

¶18 Both before and after Attorney Ruppelt's representation of S.J. ended, S.J. sent several letters to Attorney Ruppelt stating that he did not know how much of his money remained in the trust account. Attorney Ruppelt failed to provide S.J. with a full accounting for the funds received in trust either during or after the representation. The parties stipulated, and the referee agreed, that by failing to provide S.J. with a full, written accounting for his funds at the

---

     a. an itemized bill or other accounting showing the services rendered;

     b. notice of the amount owed and the anticipated date of the withdrawal; and

     c. a statement of the balance of the client's funds in the lawyer trust account after the withdrawal.

[9] SCR 20:1.4(a)(2) provides: "A lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished."

8

termination of the representation, Attorney Ruppelt violated SCR 20:1.15(d)(2)[10] (Count 10).

¶19 In the civil action brought by S.J.'s girlfriend against S.J., Attorney Ruppelt produced in discovery, pursuant to a circuit court order, twelve invoices dated between February of 2007 and October of 2009, when those bills were either altered in June of 2010 or not generated until June of 2010. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 20:8.4(c) (Count 11).

¶20 Also in the civil action brought by S.J.'s girlfriend against S.J., Attorney Ruppelt filed an affidavit stating that "No funds have been expended for any reason other than the criminal defense of [S.J.]." This statement was untrue given that $50,000 of S.J.'s funds had been temporarily used to assist Attorney Ruppelt in the purchase of a new home, and Attorney Ruppelt had repeatedly withdrawn funds from the trust before they had been earned. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 20:3.3(a)(1)[11] (Count 12).

---

[10] Former SCR 20:15(d)(2) provided: "Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property."

[11] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

9

¶21 Also in the civil action brought by S.J.'s girlfriend against S.J., Attorney Ruppelt failed to respond to discovery requests for retainer contracts, billing statements, and S.J.'s trust account ledger, necessitating two court orders to compel discovery. Attorney Ruppelt ultimately produced a retainer agreement, which was dated July 9, 2006, but had actually been signed by S.J. in early July 2010. Attorney Ruppelt also produced a trust account ledger that omitted the $50,000 disbursed to Attorney Ruppelt in connection with his purchase of a new home, his replacement of that $50,000 several months later, and his deposit of the proceeds of S.J.'s life insurance policy. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 20:8.4(c) and SCR 20:3.4(d)[12] (Counts 13 and 14).

¶22 During the course of his legal work for S.J., Attorney Ruppelt charged S.J. $395 per hour for work performed by an associate, whose hourly rate was then $200, as well as for work performed by his legal assistant. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 20:1.5(a)[13] (Count 17).

---

[12] SCR 20:3.4(d) provides: "A lawyer shall not in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party."

[13] SCR 20:1.5(a) provides:

   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in

(continued)

10

¶23 During the course of the OLR investigation, Attorney Ruppelt represented to the OLR that he had provided S.J. with billing statements showing the work performed by the firm, when this was not in fact true. Attorney Ruppelt also falsely represented to the OLR he had provided an accurate trust account ledger both to opposing counsel in S.J.'s civil matter and to S.J. at the termination of representation. The parties stipulated, and the referee agreed, that this conduct constituted a violation of SCR 22:03(6), enforceable via SCR 20:8.4(h) (Count 18).

---

determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

¶24  In his report, the referee recommended that the court suspend Attorney Ruppelt's license for 15 months, as opposed to the one year to which the parties had stipulated.  In making this recommendation, the referee considered a number of aggravating factors.  Among other things, the referee found that Attorney Ruppelt deliberately and repeatedly failed to follow trust account rules, apparently believing that he would never get caught; that he took advantage of a vulnerable client; and that he engaged in a variety of misleading and deceptive behaviors in an attempt to conceal his misconduct.

¶25  The referee recommended that Attorney Ruppelt should be required to pay the full costs of this proceeding.  The OLR's statement of costs discloses that as of April 28, 2017, the costs of this proceeding were $16,743.46.

¶26  The referee did not recommend restitution, nor did the OLR request it, explaining that there were no reasonably ascertainable restitution amounts.

¶27  We now turn to the merits of Attorney Ruppelt's appeal.  Attorney Ruppelt argues that the referee's recommended 15-month suspension is excessive.  He argues that analogous disciplinary cases best support the parties' stipulated one-year suspension——not the referee's recommended 15-month suspension.  See, e.g., In re Disciplinary Proceedings Against Biester, 2013 WI 85, 350 Wis. 2d 707, 838 N.W.2d 79 (one-year suspension for 30 counts of misconduct in six client matters; misconduct included misuse of client funds, trust account violations, and neglect of client matters); In re Disciplinary Proceedings

12

_Against Raneda_, 2012 WI 42, 340 Wis. 2d 273, 811 N.W.2d 412 (one-year suspension for 14 counts of misconduct in two client matters; misconduct included trust account violations, lack of candor toward a tribunal, and neglect of client matters).

¶28 Attorney Ruppelt further argues that this court should adopt a policy of awarding deference to parties' disciplinary stipulations. Attorney Ruppelt reasons that the parties know more about their case, the strength of the evidence, and the implications that evidence would have for discipline than the referee or this court. Attorney Ruppelt also stresses that respondent lawyers in disciplinary proceedings would greatly benefit from having some certainty that this court will approve reasonable disciplinary stipulations entered into with the OLR.

¶29 Attorney Ruppelt also complains that the referee's 15-month suspension is erroneously based on supposition and conjecture. He claims that certain of the referee's factual findings about Ruppelt's conduct were not expressly included within the parties' stipulation and thus were not an appropriate basis for increased discipline. In particular, Attorney Ruppelt takes issue with the referee's statements that his conduct was premeditated and well planned; that he appeared to believe his misconduct would never be detected; that he apparently felt that S.J. was desperate and vulnerable; that he would never have taken these liberties with a corporate or government client; and that the referee had to assume that the parties' stipulation captured all of the improper disbursements from S.J.'s funds in trust.

13

¶30 We disagree with Attorney Ruppelt's arguments. To begin with, we agree with the referee that Attorney Ruppelt's actions merit a 15-month suspension, as opposed to the one-year suspension called for in the parties' stipulation. Although this court often imposes the disciplinary sanctions that parties jointly request, we are free to reject such agreements as circumstances require. See, e.g., In re Disciplinary Proceedings Against Schreier, 2013 WI 35, 347 Wis. 2d 92, 829 N.W.2d 744 (rejecting the referee's recommendation, which was based upon the parties' stipulation, for a two-year suspension with no conditions for reinstatement, and instead imposing a 30-month suspension with conditions for reinstatement). This discretion flows from the fact that in lawyer disciplinary cases, this court is obligated to act as a protector of the public, the court system, and the integrity of the bar——not as a scribe charged with formalizing the parties' mutual wishes. Although this court fully appreciates the efficiency attained through stipulations, we will not allow the goal of efficiency to take precedence over the necessity of effecting the core functions of the lawyer disciplinary system. Sometimes, then, a departure from a joint stipulation is necessary.

¶31 This is one of those cases. We agree with the referee that the parties' stipulated one-year suspension does not adequately take into account the duration and severity of Attorney Ruppelt's misconduct. We note in particular the referee's observations that Attorney Ruppelt deliberately and repeatedly "ignore[d] all trust rules and used trust funds as

14

though they were his own"; that he displayed a willingness to cover-up his misconduct and deceive those who inquired about it; that his liquidation of S.J.'s life insurance policy without S.J.'s knowledge or consent was "most disturbing"; and that he exhibited "a total lack of professionalism and the moral character required of a licensed attorney."  On these facts, which we deem justified by the record, our cases readily support the 15-month suspension called for by the referee.  See, e.g., In re Disciplinary Proceedings Against Edgar, 230 Wis. 2d 205, 601 N.W.2d 284 (1999) (two-year suspension for conversion of $11,000 from escrow account, misrepresentations, and trust account violations).

¶32  We acknowledge here, as we have in the past, that "the imposition of discipline in attorney disciplinary cases is not an exact science."  In re Disciplinary Proceedings Against Siderits, 2013 WI 2, ¶33, 345 Wis. 2d 89, 824 N.W.2d 812.  This case certainly proves the point.  To define with precision the boundary between conduct that merits a one-year suspension, as the parties requested, versus conduct that merits a 15-month suspension, as we deem appropriate, is virtually impossible; both terms are of significant length, both terms will greatly impact the respondent lawyer's practice, and both terms will require the respondent lawyer to successfully complete the formal reinstatement procedure set forth in SCRs 22.29 through 22.33.

¶33 On these particularly troubling facts, however, we are confident that a fifteen-month suspension is needed to impress

15

upon Attorney Ruppelt and other lawyers in this state the seriousness of the professional misconduct at issue here, and to protect the public from similar misconduct in the future.

¶34 We reject the remainder of Attorney Ruppelt's arguments. As foreshadowed by the above discussion, we will not adopt, through case law, a policy by which the court will defer to parties' disciplinary stipulations, as Attorney Ruppelt requests. Due to our overarching duty to protect the public and the bar, we must remain the ultimate arbiter of the appropriate level of discipline, owing no deference on this subject to either the parties or the referee. To be sure, parties' and referees' opinions on disciplinary sanctions are highly informative, but they are just that——opinions, not authorities to which we must defer. See In re Disciplinary Proceedings Against Roitburd, 2016 WI 12, ¶20, 368 Wis. 2d 595, 882 N.W.2d 317 (stating that "it is ultimately this court's responsibility" to determine appropriate disciplinary sanctions).

¶35 Neither do we agree with Attorney Ruppelt's argument that a referee may not make any factual findings outside of the facts expressly included within the parties' stipulation. As a factfinder, the referee may draw any reasonable inferences from the evidence introduced——here, the stipulated facts——just as a circuit court may do when operating as a factfinder. See SCR 22.16 (providing that a referee has the powers of a judge trying a civil action); see also Cogswell v. Robertshaw Controls Co., 87 Wis. 2d 243, 250, 274 N.W.2d 647, 650 (1979) (when the

16

trial judge acts as the finder of fact, it is within the trial judge's authority to draw reasonable inferences from the credible evidence).

¶36 It can be no other way. To illustrate the point, consider the number of factors relevant to disciplinary recommendations that referees must frequently infer. See generally American Bar Association's Standards for Imposing Lawyer Sanctions, § 9.22 (including, as potential aggravating factors to consider in evaluating discipline, the respondent lawyer's dishonest or selfish motive, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge wrongful nature of conduct, and indifference to restitution). It would be an unusual lawyer indeed who would explicitly stipulate to any of these behaviors or attitudes. Simply put, some facts are inferential rather than empirical, and referees, like circuit courts, are empowered to infer them. We therefore reject Attorney Ruppelt's argument.

¶37 We turn next to the issue of costs. Our general practice is to impose full costs on attorneys who are found to have committed misconduct. See SCR 22.24(1m). Attorney Ruppelt has not claimed that there are reasons to depart from that practice in this matter, and we have not found any reason to do so. We therefore impose full costs.

¶38 Finally, we turn to the issue of restitution. In response to a concern expressed by the referee in reviewing the parties' stipulation, the parties informed the referee that no restitution was due because there was no reasonably

17

ascertainable restitution amount. The referee deferred to this view, though he expressed concern in his report that the parties' stipulation was "unclear" on "whether [Attorney] Ruppelt ultimately accounted to his client for his time and all funds taken by [Attorney] Ruppelt out of the trust account," and shed no light on "whether the client was satisfied with any accounting that was rendered or . . . with the overall fees charged."

¶39 We share the referee's concerns. On this record, it seems that the amount of restitution owed, if any, is not so much unknowable as it is simply unknown. Attorney Ruppelt has stipulated that he prematurely disbursed $104,644.68 of S.J.'s advanced fees, and that he overstated the hourly rate of his associate and his legal assistant for the time they billed to S.J.'s cases. Based on statements made to the referee, it appears to be Attorney Ruppelt's position that, despite these billing improprieties, his firm ultimately provided sufficient legal services to justify all collected fees. Whether this proposition is true or not is a determinable fact, to be determined based on more than Attorney Ruppelt's mere say-so.

¶40 We are not, however, a fact-finding court. We therefore remand this matter to the referee for further proceedings on the issue of restitution. The referee is to file a supplemental report on this issue within 120 days.

¶41 IT IS ORDERED that the license of Mark Alan Ruppelt to practice law in Wisconsin is suspended for a period of fifteen months, effective August 18, 2017.

18

¶42 IT IS FURTHER ORDERED that Mark Alan Ruppelt shall comply with the requirements of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶43 IT IS FURTHER ORDERED that within 60 days of the date of this order, Mark Alan Ruppelt shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $16,743.46 as of April 28, 2017.

¶44 IT IS FURTHER ORDERED that within 120 days of the date of this order, the referee shall file a supplemental report on the issue of restitution, which shall include a recommendation on how the costs of the referee's supplemental review should be paid.

¶45 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

¶46 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I join the per curiam opinion. I write about deferring to parties' stipulations.

¶47 Attorney Ruppelt proposes that the court give deference to parties' disciplinary stipulations. I disagree with his proposal.

¶48 I wholeheartedly agree with the per curiam opinion stating that the court will not act as a "scribe charged with formalizing the parties' mutual wishes" and that the court will not give deference to the parties' stipulations:

> Although this court fully appreciates the efficiency attained through stipulations, we will not allow the goal of efficiency to take precedence over the necessity of effecting the core functions of the lawyer discipline system [namely to protect the public, the court system, and the integrity of the bar].
>
> . . . .
>
> Due to our overarching duty to protect the public and the bar, we must remain the ultimate arbiter of the appropriate level of discipline, owing no deference on this subject to either the parties or the referee.

Per curiam op., ¶¶30, 35.

¶49 That said, when the per curiam opinion refers to departure from a joint stipulation when "necessary," per curiam op., ¶30, it means when a departure from a joint stipulation would help protect the public, the court system and the integrity of the bar.

¶50 For the reason set forth, I write separately.

1