# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1285 |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Tiffany T. Luther, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>       Complainant,<br>   v.<br>Tiffany T. Luther,<br>       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST LUTHER

| | |
|---|---|
| OPINION FILED: | November 28, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J. dissents. |
|   NOT PARTICIPATING: | A.W. BRADLEY, J. did not participate. |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2015AP1285-D

STATE OF WISCONSIN : IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Tiffany T. Luther, Attorney at Law:

Office of Lawyer Regulation,

        Complainant,

    v.

Tiffany T. Luther,

        Respondent.

**FILED**

**NOV 28, 2017**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*

¶1 PER CURIAM. We review the report and recommendation of Referee Jonathan V. Goodman, approving a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Tiffany T. Luther and concluding that Attorney Luther committed the professional misconduct alleged by the OLR, as stipulated by the parties. The referee determined that a public reprimand of Attorney Luther's license to practice law is appropriate.

¶2 Upon careful review of this matter, we uphold the referee's findings of fact and conclusions of law and agree that a public reprimand is an appropriate sanction for Attorney Luther's misconduct. We also find it appropriate to impose the full costs of this proceeding, which are $7,414.04 as of July 18, 2017. The OLR has confirmed that Attorney Luther paid restitution and that no additional restitution order is warranted.

¶3 Attorney Luther was admitted to the practice of law in Wisconsin on January 19, 2000 as Tiffany T. Stockinger. She practiced in Green Bay, but now lives in Las Vegas, Nevada. She has not previously been the subject of professional discipline.

¶4 The facts giving rise to this proceeding stem from Attorney Luther's involvement with Morgan Drexen, Inc. (MDI), a now defunct debt settlement company.

¶5 In June 2009, MDI and Attorney Luther agreed that she would serve as "engagement counsel" for MDI in Wisconsin. Attorney Luther was the attorney providing services to Wisconsin residents in MDI's program.

¶6 In August 2012, M.M. contacted MDI for assistance paying her debts so she could avoid bankruptcy. She had approximately $14,000 in debts, including amounts owed to GE Capital Retail Bank (GE Capital). MDI offered to help M.M. pay her debts in three years if she paid MDI $100, followed by $185 per month. Under this plan, M.M.'s payments would not be used to pay off her debts until they covered MDI's engagement fee of

2

$1,295, plus 20 percent of M.M.'s debt. Before M.M. enrolled in MDI's plan, the company read her disclosures that Attorney Luther had approved. These disclosures did not adequately inform M.M. that it was unlikely the proposed plan could pay her debts. M.M. completed the MDI forms online, including two fee agreements with Attorney Luther. Attorney Luther's agreements with M.M. also charged her $50 per month for various services such as review of a document, a simple will, responding to email, and file maintenance. M.M. was charged for these services even if she did not use them. Attorney Luther had no contact with M.M. prior to M.M. signing the fee agreements. Attorney Luther was aware of MDI's practices, and that her client M.M. was using MDI's system. Attorney Luther did not give M.M. information reasonably necessary for her to understand the material advantages and disadvantages of MDI's plan or discuss with M.M. options and alternatives to it. MDI and Attorney Luther's letters to M.M. were form letters that provided little substantive information.

¶7 In August 2012, MDI started automated monthly withdrawals from M.M.'s checking account. MDI sent M.M.'s creditors form letters notifying them of Attorney Luther's representation and requested all correspondence should be sent to Attorney Luther, via MDI. MDI did not send copies of these letters to M.M.

¶8 In November 2012, GE Capital's attorneys sent Attorney Luther, through MDI, a letter informing her that M.M.'s account was in default. The letter offered to cure M.M.'s default for

3

$716 by December 21, 2012. Neither Attorney Luther nor MDI gave a copy of this letter to M.M. or informed her of this offer at the time.

¶9 On February 14, 2013, GE Capital filed a small claims suit against M.M. In April 2013, M.M. received the summons and complaint in the GE Capital lawsuit, and notice of a May 13, 2013 hearing. She contacted MDI. MDI informed her that because she had not yet covered the engagement fee, it had taken no action to resolve her debts. As of April 22, 2013, M.M. had paid MDI and Attorney Luther $1,665.

¶10 MDI showed that M.M.'s account with them had a balance of -$115. MDI directed M.M. to contact Attorney Luther for advice about the lawsuit and sent her a limited scope representation agreement for that purpose.

¶11 Attorney Luther's limited scope representation agreement charged M.M. $550 for her assistance with M.M.'s self-representation in the GE Capital case. It also listed various charges M.M. would incur, such as $65 for a "Phone Consult with Counsel." M.M. signed the agreement, and on April 23, 2013, spoke with Attorney Luther on the phone. Attorney Luther told M.M. that she would not appear in court for a May 13, 2013 hearing, or otherwise represent her in the matter. Attorney Luther advised M.M. to request a 90-day extension by which time she would have enough funds in her MDI account to pay Attorney Luther's fee and file for bankruptcy. Attorney Luther charged M.M. $35 for this conversation as a "rush job."

4

¶12 On or about April 30, 2013, M.M. spoke with MDI. MDI recorded her agreement to file for bankruptcy. In May 2013, Attorney Luther and MDI sent M.M. two letters informing her that they had not received either the necessary paperwork or fee to proceed with bankruptcy.

¶13 On May 13, 2013, M.M. appeared at the GE Capital small claims hearing, pro se. In May 2013, M.M. consulted another attorney and also closed her checking account to stop the automated payments to MDI.

¶14 On May 31, 2013, M.M.'s new attorney wrote to MDI, asking it stop the automated withdrawals and requesting a refund from MDI and Attorney Luther.

¶15 On June 23, 2013, M.M. filed a grievance against MDI and Attorney Luther with DFI. In July 2013, M.M.'s new attorney filed a Chapter 7 bankruptcy petition for M.M., and on August 9, 2013, GE Capital dismissed its small claims action against M.M.

¶16 On October 18, 2013, the bankruptcy court discharged M.M.'s debts, including those included in MDI's debt settlement program.

¶17 In November 2013, DFI forwarded M.M.'s grievance to the OLR, which commenced an investigation. This disciplinary proceeding ensued. In January 2014, Attorney Luther refunded $800 to M.M.

¶18 The remaining counts of misconduct involve Attorney Luther's representation of J.B. on behalf of MDI. In January 2013, in response to a television advertisement, J.B. sought assistance consolidating approximately $22,000 in debt. MDI

5

offered J.B. a plan to assist with his debts if he paid MDI $260 per month.  J.B.'s payments would not be used to pay off his debts until they covered MDI's engagement fee of $1,750, plus 20 percent of J.B.'s debt.

¶19  Before J.B. enrolled in MDI's plan, the company read him disclosures that Attorney Luther had approved.  These disclosures did not adequately inform J.B. that it was unlikely that the proposed plan could pay his debts.  J.B. completed MDI forms online, including two fee agreements with Attorney Luther. Attorney Luther's agreements with J.B. charged him $50 per month for various services such as review of a document, a simple will, responding to email, and file maintenance.  MDI charged J.B. for these services, even if he did not use them.

¶20  Attorney Luther had no contact with J.B. prior to J.B. signing the fee agreements.  Attorney Luther was aware of MDI's practices, and that her client J.B. was using MDI's system. Attorney Luther did not give J.B. information reasonably necessary for him to understand the material advantages and disadvantages of MDI's plan, nor did she discuss alternatives to it.

¶21  On January 28, 2013, Attorney Luther called J.B. to welcome him to the MDI program.  This was their only personal contact during the representation.  In January 2013, MDI started automated monthly account withdrawals from J.B.'s checking account.

¶22  In March 2013, MDI sent J.B.'s creditors form letters notifying them of Attorney Luther's representation and requested

all correspondence should be sent to Attorney Luther, via MDI. MDI did not send copies of these letters to J.B.

¶23 In April, August, and October of 2013, MDI rejected settlement offers from J.B.'s creditors. Neither Attorney Luther nor MDI informed J.B. of the settlement offers.

¶24 In January 2014, J.B. learned that MDI was not paying his creditors. On February 5, 2014, J.B. spoke with Attorney Luther's paralegal, requesting a full refund or full payment of his debts enrolled in the MDI program. While this conversation was ongoing, MDI generated a settlement offer regarding one of J.B.'s debts for Attorney Luther's consideration. Attorney Luther approved the offer that day, but did not discuss it with J.B. On March 6, 2014, J.B. wrote to Attorney Luther requesting a full refund.

¶25 In April, Attorney Luther requested that MDI refund all of J.B.'s payments, less $1,000. On May 16, 2014, Attorney Luther's paralegal sent J.B. a refund check for $3,060.

¶26 On June 30, 2015, the OLR filed a disciplinary complaint against Attorney Luther alleging thirteen (13) counts of misconduct and seeking an 18-month suspension and restitution. Attorney Luther retained counsel and filed an Answer. On August 25, 2015, Jonathan V. Goodman was appointed referee.

¶27 On November 1, 2016, the OLR filed an Amended Complaint alleging ten (10) counts of misconduct and seeking a public reprimand. Attorney Luther filed an Amended Answer.

7

¶28 On May 17, 2017, the OLR and Attorney Luther filed a Stipulation whereby Attorney Luther withdrew her Amended Answer and stipulated that she did not contest the alleged misconduct. The Stipulation states that "Luther and OLR agree that the appropriate level of discipline to impose for Luther's misconduct is a public reprimand." It acknowledged that restitution had been paid.

¶29 The OLR's amended complaint alleged, and Attorney Luther stipulated that, by failing to provide M.M. information reasonably necessary to inform her of the results of accepting MDI's debt settlement plan, the advisability of paying fees which would not be used to achieve her objectives, or to discuss with M.M. other options to achieve her goal of paying her debts and avoiding bankruptcy, Attorney Luther violated SCR 20:1.4(a)(2)[1] and(b).[2]

¶30 The amended complaint alleged, and Attorney Luther stipulated that, by failing to provide M.M. copies of the letters sent to her creditors or accurately inform M.M. of the actions taken on her behalf, thereby failing to keep M.M.

---

[1] SCR 20:1.4(a)(2) provides: "A lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished."

[2] SCR 20:1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

reasonably informed about the status of her matter, Attorney Luther violated SCR 20:1.4(a)(3).[3]

¶31 The amended complaint alleged, and Attorney Luther stipulated that, by failing to inform M.M. of the default/right to cure notice from GE Capital, Attorney Luther violated SCR 20:1.4(a)(3), and thereby preventing M.M. from making an informed decision regarding the representation, Attorney Luther violated SCR 20:1.4(b).

¶32 The amended complaint alleged, and Attorney Luther stipulated that, by charging M.M. a $50 monthly fee for which M.M. received no meaningful services, and which was not used for any expenses specifically related to the representation, Attorney Luther violated SCR 20:1.5(a).[4]

---

[3] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

[4] SCR 20:1.5(a) provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(continued)

¶33 The amended complaint alleged, and Attorney Luther stipulated that, by failing to explain to M.M. the purpose and effect of the advanced payments M.M. was making, Attorney Luther violated SCR 20:1.5(b)(1).[5]

¶34 The amended complaint alleged, and Attorney Luther stipulated that, by failing upon termination of the representation in May of 2013 to refund the entire amount M.M. paid to Attorney Luther, when Attorney Luther had provided no meaningful legal services to earn the fee, Attorney Luther violated SCR 20:1.16(d).[6]

---

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[5] SCR 20:1.5(b)(1) provides:

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

[6] SCR 20:1.16(d) provides:

(continued)

¶35 The amended complaint alleged and Attorney Luther stipulated that, by failing to give J.B. information reasonably necessary to evaluate the material advantages and disadvantages of MDI's proposed course of action, the advisability of paying fees which would not be used to achieve his objectives, or to discuss with J.B. other options and alternatives which could achieve his goal of paying his debts in full in order to maintain his credit, Attorney Luther violated SCR 20:1.4(a)(2) and (b).

¶36 The amended complaint alleged and Attorney Luther stipulated that, by failing to provide J.B. copies of the letters sent to his creditors or otherwise accurately inform him of the status of his debts, thereby failing to keep J.B. reasonably informed about the status of his matter, Attorney Luther violated SCR 20:1.4(a)(3).

¶37 The amended complaint alleged and Attorney Luther stipulated that, by entering into an agreement for and charging J.B. a $50 monthly fee for which he received no meaningful services in furtherance of his objectives, and which was not

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

11

used for any expenses incurred by Attorney Luther or specifically related to her representation of J.B., Attorney Luther charged an unreasonable fee and an unreasonable amount for expenses in violation of SCR 20:1.5(a).

¶38 The amended complaint alleged and Attorney Luther stipulated that, by failing to explain to J.B. the purpose and effect of the advanced payments he was making, Attorney Luther violated SCR 20:1.5(b)(1).

¶39 Attorney Luther affirms that the stipulation did not result from plea bargaining; she fully understands the misconduct allegations; she fully understands her right to contest this matter; she fully understands her right to consult with counsel; her entry into this stipulation is made knowingly and voluntarily; and, her entry into this stipulation represents her decision not to contest the misconduct alleged in the amended complaint.

¶40 On June 28, 2017, the referee issued a report stating that "based upon the Stipulation and the fact that the pleadings involved herein indicate that Luther had no prior misconduct, the Referee recommends a Public Reprimand." He recommended the court impose the costs of the proceeding on Attorney Luther.

¶41 On July 18, 2017, the OLR filed its statement of costs in the amount of $7,414.04. In this statement, the OLR noted that it agreed to a reduction in the proposed discipline because the OLR determined that Attorney Luther had paid restitution and that her involvement with MDI was limited to overall debt

12

reduction services, and was not as egregious as initially believed.

¶42 On August 8, 2017, Attorney Luther filed an objection to costs, seeking an unspecified reduction. Essentially, she argued that the OLR initially, but wrongly, thought that she was heavily involved in MDI's business. Attorney Luther asserted that she shouldn't be expected to pay the costs for the OLR's "overzealous approach."

¶43 On August 17, 2017, the OLR filed a reply to Attorney Luther's objection to costs. The OLR maintained that full costs were warranted.

¶44 No appeal was filed so we review this matter pursuant to SCR 22.17(2). This court will adopt the referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶45 On September 11, 2017, this court remanded the matter to the referee with directions to file a supplemental report justifying the recommendation for a public reprimand and for a recommendation on the costs dispute. The referee permitted the parties to submit supplemental memoranda on these issues and, on October 2, 2017, filed a supplemental report. In it, the referee states that "[w]here parties have come to an agreement,

13

the referee must find some factor which would shock the conscience for the referee to recommend a discipline other than that agreed to by the parties." No case is cited for this assertion, probably because there is none. This is a misstatement of the applicable legal standard.

¶46 We note our recent observation in In re Disciplinary Proceedings Against Ruppelt, 2017 WI 80, ¶30, 377 Wis. 2d 441, 898 N.W.2d 473:

> [I]n lawyer disciplinary cases, this court is obligated to act as a protector of the public, the court system, and the integrity of the bar——not as a scribe charged with formalizing the parties' mutual wishes. Although this court fully appreciates the efficiency attained through stipulations, we will not allow the goal of efficiency to take precedence over the necessity of effecting the core functions of the lawyer disciplinary system. Sometimes, then, a departure from a joint stipulation is necessary.

¶47 Just as this court is free to reject a stipulated disciplinary sanction as circumstances require, so too, are referees. See, e.g., id., (adopting the referee's recommendation for a 15-month suspension, as opposed to the one-year suspension to which the parties had stipulated).

¶48 As no two disciplinary cases are precisely the same, there is no standard sanction for any particular misconduct. For that reason, it is particularly important that referees identify and consider the factors relevant to determining an appropriate sanction, which include:

> [T]he seriousness, nature and extent of misconduct, the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct, the need to impress upon

14

the attorney the seriousness of the misconduct and the need to deter other attorneys from committing similar misconduct.

In re Disciplinary Proceedings Against Scanlan, 2006 WI 38, ¶72, 290 Wis. 2d 30, 712 N.W.2d 877.   In determining an appropriate sanction recommendation referees should consider whether the lawyer has previously been disciplined and whether any aggravating and or mitigating factors are present.   See ABA Standards for Imposing Lawyer Sanctions.   Typically, the referee will consider factually similar cases.   Stipulated discipline is entitled to no special deference.

¶49 To be sure, the parties' opinions on disciplinary sanctions are informative but they are just that – opinions, not authorities to which the referee must defer.   We, in turn, "remain the ultimate arbiter of the appropriate level of discipline, owing no deference on this subject to either the parties or the referee."   See Ruppelt, 377 Wis. 2d 441, ¶34.

¶50 Here, the referee has provided case law in the supplemental report that supports the recommended discipline. We agree that In re Disciplinary Proceedings Against Shepherd, 2017 WI 66, 376 Wis. 2d 129, 897 N.W.2d 44 is instructive and that the nature of the misconduct is sufficiently analogous to this case, that imposing similar discipline is not unreasonable. There, we imposed a public reprimand on a lawyer with no prior disciplinary history, who committed ten counts of misconduct, including violations of the rules regarding fee agreements, trust accounts, failure to respond to clients, and failure to cooperate with the OLR's investigation.   See also In re

Disciplinary Proceedings Against Trudgeon, 2009 WI 96, 321 Wis. 2d 560, 774 N.W.2d 469 (public reprimand imposed on lawyer with no prior discipline who committed eight counts of professional misconduct including failing to appear at a court hearing, failing to properly explain the basis of his fee, failing to adequately communicate with his client, and failing to respond to reasonable requests for information); In re Disciplinary Proceedings Against D'Arruda, 2013 WI 90, 351 Wis. 2d 227, 839 N.W.2d 575 (public reprimand imposed on lawyer with one previous private reprimand who committed 12 counts of misconduct, including failing to explain the basis or rate of his fee, failing to refund unearned fees, failing to provide a client's file to successor counsel, failing to respond to reasonable requests for information, and repeatedly failing to cooperate with the OLR's investigation); and In re Disciplinary Proceedings Against Hicks, 2012 WI 11, 338 Wis. 2d 558, 809 N.W.2d 33 (public reprimand imposed on lawyer with no prior disciplinary history who committed eight counts of misconduct including failing to timely pursue clients' postconviction or appellate interests, failing to communicate with clients, and failing to respond to the OLR's requests for information).

¶51 On balance, we will adopt the referee's findings of fact and conclusions of law that, based on the parties' stipulation, Attorney Luther violated the supreme court rules as alleged in the ten counts of the amended complaint. We further agree with the referee that a public reprimand of Attorney Luther's license to practice law in Wisconsin is sufficient

16

discipline.   We agree, further, that notwithstanding Attorney Luther's objections, it is appropriate to impose the full costs of this disciplinary proceeding on her.   We accept the OLR's representation that there is no need for a restitution order in this matter.

¶52  IT IS ORDERED that Tiffany T. Luther is publicly reprimanded.

¶53  IT IS FURTHER ORDERED that within 60 days of the date of this order Tiffany T. Luther shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $7,414.04 as of July 18, 2017.

¶54  Ann Walsh Bradley, J., did not participate.

¶55 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* A public reprimand is an insufficient sanction for the serious misconduct to which Attorney Luther stipulated.