# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP201-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Walter W. Stern, III, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, |
| |       Complainant, |
| |    v. |
| | Walter W. Stern, III, |
| |       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST STERN

| | |
|---|---|
| OPINION FILED: | November 23, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.  2020AP201-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Walter W. Stern, III,
Attorney at Law:

Office of Lawyer Regulation,

      Complainant,

  v.

Walter W. Stern, III,

      Respondent.

**FILED**

**NOV 23, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney's license suspended.*

¶1  PER CURIAM.  We review a report filed by Referee Jean A. DiMotto, recommending the court suspend Attorney Walter W. Stern, III's license to practice law for a period of 45 days for three counts of professional misconduct.  No appeal has been filed so we consider this matter pursuant to Supreme Court Rule (SCR) 22.17(2).[1]

_____

¹ SCR 22.17(2) provides:

¶2 We approve and adopt the referee's findings of fact and conclusions of law. We conclude that the seriousness of Attorney Stern's misconduct warrants a 60-day license suspension and we impose the full costs of this proceeding on Attorney Stern. The OLR did not seek restitution in this matter and no restitution is ordered.

¶3 Attorney Stern has been licensed to practice law in Wisconsin since 1974 and has been the subject of five previous disciplinary proceedings. In August of 1988, the Board of Attorneys Professional Responsibility (BAPR), the predecessor to the OLR, imposed a private reprimand on Attorney Stern for professional misconduct consisting of communicating on the subject of the representation with a party he knew to be represented by a lawyer without the consent of that lawyer.

¶4 In September of 1992, BAPR publicly reprimanded Attorney Stern for professional misconduct consisting of advancing a factual position without a basis; failing to maintain the respect due courts of justice and judicial officers; violating the Attorney's Oath; and engaging in offensive personality. Public Reprimand of Walter W. Stern, III, No. 1992-11 (electronic copy

_____

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

available                                                              at
https://compendium.wicourts.gov/app/raw/000305.html).

¶5  In November of 1993, Attorney Stern consented to a
private reprimand for professional misconduct consisting of
failing to pay a third-party lien from settlement proceeds after
receiving notice of the lien.  BAPR Private Reprimand, No. 1993-25
(electronic   copy   available   at   https://compendium.
wicourts.gov/app/raw/000111.html).

¶6  In March of 2008, Attorney Stern consented to a private
reprimand for professional misconduct consisting of committing
criminal acts that reflected adversely on his honesty,
trustworthiness, or fitness as a lawyer.  The discipline was a
result of Attorney Stern pleading no contest to a second and third
offense of operating a motor vehicle while under the influence.
OLR Private Reprimand, No. 2008-08.

¶7  In 2013, Attorney Stern's license was suspended for two
years for professional misconduct consisting of engaging in
conduct resulting in his federal criminal conviction for
conspiring to commit money laundering.  In re Disciplinary
Proceedings Against Stern, 2013 WI 46, 347 Wis. 2d 552, 830
N.W.2d 674.  Two months later, his conviction was reversed by the
United States Circuit Court for the Seventh Circuit.  He was
released from prison and pled guilty to misdemeanor contempt of
court.  Attorney Stern's license to practice law was reinstated on
February 4, 2016.  In re Reinstatement of Stern, 2016 WI 6, 366
Wis. 2d 431, 847 N.W.2d 93.

¶8 On January 30, 2020, the OLR filed a complaint alleging that Attorney Stern committed three counts of professional misconduct involving his representation of two clients. The OLR later amended its complaint to add a fourth count, alleging that Attorney Stern violated SCR 20:1.18(b) by having a discussion with a prospective client and thereafter by using or revealing to other parties information he learned in the consultation. However, the OLR dismissed this fourth count on March 22, 2021.

¶9 In April 2021, Attorney Stern executed a no contest plea to the three remaining counts of misconduct alleged in the amended complaint and the parties executed a stipulation that added some additional context for the allegations. The parties disputed the appropriate sanction. The OLR recommended a 90-day license suspension and Attorney Stern sought a public reprimand.

¶10 On August 6, 2021, the referee filed findings of fact, conclusions of law, and a recommendation. She accepted the parties' stipulation and Attorney Stern's no contest plea and, based on admissions in Attorney Stern's Answer to the Amended Complaint as well as the stipulation and no contest plea, she determined that there was clear, satisfactory, and convincing evidence that Attorney Stern violated the three counts of professional conduct, as alleged. The referee recommended this court suspend Attorney Stern's license to practice law for 45 days and impose full costs upon him.

¶11 We will affirm a referee's findings of fact unless they are clearly erroneous; conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14,

4

¶5, 269 Wis. 2d 43, 675 N.W.2d 747. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶12 The first two counts of misconduct pertain to Attorney Stern's representation of F.J. Attorney Stern first met with F.J. and F.J.'s mother (who had a power of attorney for F.J.) on February 11, 2016, shortly after his law license was reinstated following his 2013 license suspension. F.J. was seeking legal representation in a pending child support action, a dog bite injury case, and regarding potential claims against a neighbor and the Wauwatosa Police Department. As Attorney Stern was aware, F.J. suffers some cognitive challenges resulting from injuries he sustained when he was the victim of a serious beating several years ago.

¶13 Daniel Storm, f/k/a Daniel Slaughter, an associate of Attorney Stern, also attended this meeting. Daniel Storm had been working as an investigator for Attorney Stern for several months at the time of this meeting, including while Attorney Stern's law license was suspended. The parties stipulated that Attorney Stern believed that F.J. had a prior, lengthy relationship with Daniel Storm, because Storm had posted bond for F.J. when F.J. was held in the county jail. Attorney Stern also believed that F.J. and/or his mother acknowledged that they owed Storm $17,000 for work that Storm had performed on F.J.'s behalf.

¶14 During that meeting, F.J. agreed to pay $4,000 in fees for representation in each of the child support and dog bite cases.

5

At the meeting, Attorney Stern provided F.J. and his mother with a document entitled "Promissory Note With Payment on Demand" which stated that F.J. was to pay Attorney Stern $25,000 by February 29, 2016 toward the child support and dog bite matters ($8,000) and for the work performed by Storm ($17,000). Attorney Stern also asked F.J. and his mother to sign an "Irrevocable Assignment" which purported to give Attorney Stern the right to ask for $20,000 upon demand toward the Promissory Note.

¶15 Critically, Attorney Stern did not notify F.J. in writing of the desirability of seeking independent counsel, give F.J. a reasonable opportunity to seek the advice of independent counsel on the transaction, or obtain informed written consent from F.J. regarding the essential terms of the transaction and Attorney Stern's role in the transaction and whether Attorney Stern was representing F.J. in the transaction.

¶16 F.J. and his mother signed the Promissory Note and the "Assignment" that day. F.J. also signed a contingent fee agreement for his representation for potential claims against his neighbor, as well as a contingent fee agreement for his potential claims against the Wauwatosa Police Department.

¶17 The OLR alleged, the parties stipulated, and the referee concluded that by having F.J. and his mother sign a promissory note and assignment for $25,000 without notifying them in writing of the desirability of seeking, and giving them a reasonable opportunity to seek, the advice of independent counsel, and without informing them and obtaining written consent from them about the essential terms of the transaction and Attorney Stern's role in

6

the transaction including whether he was representing them in the transaction, Attorney Stern violated SCR 20:1.8(a).[2]

¶18  On February 16, 2016, Attorney Stern appeared for F.J. in the child support, termination of parental rights and adoption case in Winnebago County Circuit Court and moved the court to appoint a guardian ad litem for F.J. to provide the court with information about F.J.'s competency.  Eventually, the court also approved a stipulation allowing Attorney Stern to expend $2,000 of funds retained in his trust account to hire Dr. Terry Bruett to conduct a psychological evaluation of F.J.

¶19  There was a significant delay in paying Dr. Bruett for the services he provided.  Accordingly, the OLR alleged, the parties stipulated, and the referee concluded that, by failing to

---

[2] SCR 20:1.8(a) provides:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

promptly deliver $2,000 directly to Dr. Bruett from funds held in trust for services rendered by Dr. Bruett, Attorney Stern violated SCR 20:1.15(e)(1).[3] It is not disputed that Dr. Bruett has since been paid in full.

¶20 The third count of professional misconduct relates to Attorney Stern's actions in the matter of the Estate of T.T. In April 2016, T.T. died while in custody at the Milwaukee County jail. T.T. was survived by two adult sons, and other family members. A Seattle law firm agreed to provide the family with legal guidance and subsequently contacted local Milwaukee counsel to assist them. The family was advised to establish an estate for T.T. so the estate could pursue claims against Milwaukee County.

¶21 Initially, T.R., was the family's main contact person and she offered to be the estate's representative. Local counsel prepared the estate paperwork, including a Petition for Special Administration naming T.R. as Special Administrator of the T.T. Estate. T.T.'s adult children both consented to this petition and T.R. was appointed Special Administrator. On November 25, 2016,

---

[3] SCR 20:1.15(e)(1) provides:

> Upon receiving funds or other property in which a client has an interest, or in which a lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

8

T.R. signed a fee agreement to have the Seattle firm represent the estate in potential civil claims.

¶22 Meanwhile, T.T.'s adult sons had elected to retain Attorney Stern. On January 3, 2017, Attorney Stern wrote to the Seattle firm, advising them that T.T.'s adult son had retained Attorney Stern "to represent him and [T.T.'s] estate in proposed litigation against Milwaukee County and those responsible for this tragic event." He received no reply. On January 5, 2017, Attorney Stern wrote a similar letter to local Wisconsin counsel.

¶23 On January 9, 2017, one of T.T.'s adult sons advised local counsel that he intended to have T.R. removed as Special Administrator. On January 12, 2017, local counsel emailed Attorney Stern informing Attorney Stern that T.R. was still the Estate's Special Administrator, and that she had retained counsel.

¶24 On January 12, 2017, Attorney Stern emailed T.R. directly, indicating that he intended to have her replaced as Special Administrator. On January 14, 2017, Attorney Stern again emailed T.R. directly about the T.T. matter.

¶25 The OLR alleged, the parties stipulated, and the referee concluded, that by communicating directly with T.R. concerning the T.T. matter, Attorney Stern violated SCR 20:4.2(a).[4]

---

[4] SCR 20:4.2(a) provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

9

¶26 Having accepted the stipulation and no contest plea, the primary issue for the referee was the appropriate sanction for Attorney Stern's admitted misconduct. Again, Attorney Stern sought a public reprimand while the OLR sought a 90-day license suspension.

¶27 As aggravating factors, the OLR pointed to Attorney Stern's prior disciplinary history,[5] the multiple misconduct violations, and F.J.'s vulnerability. The OLR acknowledged several mitigating factors including an absence of a dishonest motive, Attorney Stern's cooperation with the disciplinary process, and his remorse.

¶28 In addition, the parties' stipulation indicates that Attorney Stern's associate, Daniel Storm, played a role in the F.J. matter. Attorney Stern says that before the initial meeting with F.J., Storm had already prepared the documents to be given to F.J. and he insisted those documents were essential. Attorney Stern explains that he added the handwritten notes to those documents (indicating that the Promissory Note would be replaced or followed by written retainer agreements) and this, in fact, was

---

[5] Attorney Stern argues that the 2013 disciplinary matter was predicated on a criminal conviction that was subsequently reversed on appeal, so he maintains that "there should have been no license suspension." The referee was not persuaded, noting correctly that Attorney Stern stipulated to that two-year license suspension and did not appeal the referee's report and recommendation. Additionally, the standards and burden of proof for lawyer misconduct are not synonymous with those required for a criminal conviction.

10

done. Attorney Stern never executed the Promissory Note and it was not enforced.

¶29 In addition, when Attorney Stern indicated he would pay Dr. Bruett, Storm apparently "coaxed and influenced" Attorney Stern into allowing him to act as agent for the payment. Attorney Stern gave Storm the $2,000 payment from his trust account but Storm made only two partial payments to Dr. Bruett totaling only 60 percent of the amount owed to Dr. Bruett. Attorney Stern later paid Dr. Bruett the balance from his personal funds.

¶30 The referee acknowledged that Storm may have exercised a coercive influence on Attorney Stern, but emphasized that it was nonetheless Attorney Stern who impermissibly presented the Promissory Note and Irrevocable Assignment to F.J. and his mother for signature, without the required written explanations.[6] However, the referee noted a number of mitigating factors, stating: "Attorney Stern did ameliorate the situation by his handwritten note on the last page of the Promissory Note, and his declination to sign the Note." In addition, Attorney Stern did follow through and provided F.J. with the appropriate documents for establishing their attorney-client relationship, and shortly after Attorney Stern's initial meeting with F.J., Attorney Stern asked the circuit court to appoint a guardian ad litem for F.J. and requested the

---

[6] In his response brief, Attorney Stern states that "Daniel Storm . . . turned out to not only be untrustworthy, but dangerous." The referee's report quotes at some length from the response brief, which expands on this assertion. These assertions are not supported by record citations or specific findings made in this matter and we will not discuss them further.

11

psychological evaluation that apparently helped resolve that case. The referee also considered it "strongly mitigating" that Attorney Stern provided pro bono representation to F.J. in several other matters and she acknowledged that "Attorney Stern has absolutely expressed his sincere remorse for his errors."

¶31 However, the referee concluded that a public reprimand would be insufficient to impress upon Attorney Stern the seriousness of his misconduct. The referee specifically noted that although his prior incidents of misconduct were somewhat remote in time, this is now the second time that Attorney Stern has been disciplined for communicating with a party he knew to be represented by a lawyer without the consent of the person's lawyer.

¶32 Still, the referee was not persuaded that a 90-day suspension was necessary, explaining that the numerous mitigating factors dictated a shorter suspension. The referee opined that the cases cited by the OLR in support of a 90-day suspension involved more serious misconduct than that committed by Attorney Stern. See, e.g., In re Disciplinary Proceedings Against Alfredson, 2019 WI 17, 385 Wis. 2d 565, 923 N.W.2d 869 (imposing 90-day suspension for, inter alia, failing to hold client funds in trust, failing to promptly deliver funds, converting client funds, and failure to cooperate with the OLR); In re Disciplinary Proceedings Against Brey, 171 Wis. 2d 65, 490 N.W.2d 15 (1992) (imposing 60-day suspension on district attorney with no prior discipline for meeting with a represented defendant in jail without his lawyer and discussing a plea deal with him then misrepresenting his conduct to the OLR); Public Reprimand of Stephen W. Carpenter,

12

No. 1992-9 (electronic copy available at https://compendium.wicourts.gov/app/raw/ 000303.html) (attorney met with inmate three times without counsel's consent). On balance, the referee recommended this court suspend Attorney Stern's license to practice law for 45 days and that he be required to pay the full costs of this disciplinary proceeding.

¶33 There is no showing that any of the referee's findings of fact, based on the parties' stipulation, are clearly erroneous, so we adopt them. We also agree with the referee's legal conclusions that Attorney Stern violated the Supreme Court Rules noted above and that Attorney Stern's misconduct merits a license suspension. The cases cited by Attorney Stern in support of his request for a public reprimand are not persuasive. Several involve lawyers who had no previous discipline. See In re Disciplinary Proceedings Against Preloznik, 169 Wis. 2d 137, 485 N.W.2d 249 (1992) (imposing public reprimand on attorney not previously disciplined who entered into a business transaction with a client with potentially differing interests without the client's consent); In re Disciplinary Proceedings Against Luther, 2017 WI 98, 378 Wis. 2d 330, 903 N.W.2d 791 (imposing public reprimand on attorney with no previous discipline for her role in in a fee based debt settlement plan).

¶34 With respect to the appropriate sanction, after careful consideration, we agree with the referee's reasoning, but while the referee recommended a 45-day license suspension, a 60-day license suspension is, generally, our minimum suspension length.

13

We are not persuaded that we should diverge from this practice in this case. See In re Disciplinary Proceedings Against Grady, 188 Wis. 2d 98, 108-09, 523 N.W.2d 564 (1994); In re Disciplinary Proceedings Against Gray, 2018 WI 39, ¶14, 381 Wis. 2d 56, 910 N.W.2d 923. This is Attorney Stern's sixth disciplinary proceeding and it is concerning that Attorney Stern committed the initial misconduct in the F.J. matter a mere week after his law license was reinstated. We determine that a 60-day suspension is appropriate discipline. As is our normal practice, we deem it appropriate to impose the full costs of this proceeding on Attorney Stern.

¶35 IT IS ORDERED that the license of Walter W. Stern, III, to practice law in Wisconsin is suspended for a period of 60 days, effective January 4, 2022.

¶36 IT IS FURTHER ORDERED that Walter W. Stern, III, shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶37 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

¶38 IT IS FURTHER ORDERED that no restitution is imposed upon Walter W. Stern, III, in this matter.

¶39 IT IS FURTHER ORDERED that within 60 days of the date of this order, Walter W. Stern, III, shall pay to the Office of Lawyer Regulation the full costs of this proceeding, which are $5,515.41 as of August 27, 2021.

14