**2024 WI 43**

# Supreme Court of Wisconsin



OFFICE OF LAWYER REGULATION,
*Complainant-Respondent,*

*v.*

AMOUN VANG SAYAOVONG,
*Respondent-Appellant.*

No. 2015AP680-D
Decided December 17, 2024

ATTORNEY REINSTATEMENT PROCEEDING.

¶1 PER CURIAM.   Amoun Vang Sayaovong has appealed Referee Joseph D. Jacobson's report recommending that we deny Attorney Sayaovong's petition for the reinstatement of his license to practice law in Wisconsin. We agree with the referee that Attorney Sayaovong's license to practice law should not be reinstated at this time. In addition, we direct Attorney Sayaovong to pay the costs of the reinstatement proceeding, which are $4,160.75 as of March 26, 2024.

¶2 Attorney Sayaovong was admitted to practice law in Wisconsin in 2007. In 2014, he was publicly reprimanded for seven counts of misconduct arising out of two client matters. In re Disciplinary Proceedings Against Sayaovong, 2014 WI 94, 357 Wis. 2d 312, 850 N.W.2d 940. The misconduct consisted of failing to advance a client's interest, failing to have a written fee agreement setting forth the rate for his fee, failing to hold an advanced fee in trust, failing on termination of representation to timely provide an itemized statement as to legal services

rendered, and failing to cooperate with the Office of Lawyer Regulation's (OLR) investigation.

¶3 In 2015, Attorney Sayaovong's law license was suspended for six months for six counts of misconduct arising out of two client matters. In re Disciplinary Proceedings Against Sayaovong, 2015 WI 100, 365 Wis. 2d 200, 871 N.W.2d 271. The misconduct consisted of failing to act with reasonable diligence and promptness in representing a client, failing to keep a client reasonably informed about the status of a matter and promptly complying with reasonable requests by the client for information, failing to properly account for funds received in which a client or third party has an interest, failing to cooperate with an OLR investigation, practicing law while his license was suspended, and violating supreme court rules regulating the conduct of lawyers.

¶4 Attorney Sayaovong filed a petition for the reinstatement of his law license in March 2023. The OLR opposed the petition. A hearing was held before the referee on November 9, 2023.

¶5 The referee issued his report and recommendation on February 26, 2024. The referee found that Attorney Sayaovong had met some of the criteria for reinstatement, including establishing that he has the moral character to practice law in Wisconsin; that he desires to have his license reinstated; that he has not practiced law during the period of his suspension; that he has maintained competence and learning in the law; and that his conduct since the suspension has been exemplary and above reproach.

¶6 The referee found that Attorney Sayaovong did not meet other aspects of the reinstatement criteria. The referee found that Attorney Sayaovong failed to demonstrate: (1) that his resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest; (2) that his representations in the reinstatement petition are substantiated; and (3) that he has complied fully with the terms of the order of suspension and with the requirements of Supreme Court Rule (SCR) 22.26 regarding activities following suspension. In addition, the referee found that Attorney Sayaovong failed to demonstrate that he has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with those standards; that he can be safely recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in

general to aid in the administration of justice as a member of the bar and as an officer of the courts; and that he has made restitution to or settled all claims of persons injured or harmed by his misconduct.

¶7      The referee noted that this court's order suspending Attorney Sayaovong's law license required him to comply with the terms of SCR 22.26. That rule requires an attorney whose license is suspended to file with the OLR director, within 25 days after the effective date of the suspension, an affidavit showing full compliance with the provisions of the suspension order and with the rules and procedures regarding the closing of the attorney's practice. The affidavit must also contain a list of all jurisdictions before which the attorney is admitted to practice and a list of clients in all matters pending before any court or administrative agency, together with the case number of each matter. In addition, the rule requires a suspended attorney to maintain records of the various steps taken under the rule. The referee found that Attorney Sayaovong failed to meet his burden in regard to fully complying with any of these requirements until March 13, 2023, when he finally submitted the required affidavit.

¶8      While Attorney Sayaovong argued that his failure to timely submit the required affidavit was the result of his being incapacitated, due to depression, for a period of time, the referee noted that Attorney Sayaovong indicated that his state of "incapacitation" ended in 2018 at the latest, yet he did not submit the affidavit until March of 2023 after receiving two reminders from OLR that the affidavit was delinquent. The referee said Attorney Sayaovong's failure to timely comply with the applicable rules and take necessary actions in his own interest was one of many facts that weighed against reinstatement. The referee said, "If he is unwilling or unable to do so for himself, it certainly calls into question his willingness or ability to 'act with reasonable diligence and promptness in representing a client' as required by the Wisconsin Rules for Professional Conduct for Attorneys."

¶9      In concluding that Attorney Sayaovong failed to demonstrate a proper understanding of and attitude toward the standards that are imposed upon members of the bar, the referee noted that this court's 2014 order publicly reprimanding Attorney Sayaovong required him to pay restitution to former clients, and both the 2014 public reprimand order and the 2015 order suspending his law license required him to pay the costs of

the disciplinary proceedings, yet no restitution or costs had ever been paid.[1] The referee said there is no evidence that Attorney Sayaovong has made any effort to locate and pay restitution to his former clients.

¶10 The referee also noted that Attorney Sayaovong has made no effort to satisfy his legal obligation to pay hundreds of dollars in unpaid traffic tickets to Waukesha County that were incurred circa 2021. Attorney Sayaovong blamed his failure to pay the outstanding traffic tickets on mental illness and said he did not remember the unpaid fines until his state income taxes were intercepted in 2023. The referee said even after the tax interception, Attorney Sayaovong still did not pay the fines, and it was not until OLR questioned him about the unpaid fines at the evidentiary hearing that he finally sent a check to Waukesha County.

¶11 The referee found the restitution issue to be "more relevant and disturbing." The referee noted that in late 2021, when Attorney Sayaovong began to make inquiries about the reinstatement of his law license, OLR reminded him of his obligation to pay restitution. OLR said it understood that one of the persons to whom restitution was owed was deceased, but OLR believed it might have contact information for the decedent's sister and also might have contact information for the other person to whom restitution was owed. Attorney Sayaovong testified at the evidentiary hearing that the first time he asked OLR for this contact information was in March 2023. The referee said there is no evidence that Attorney Sayaovong ever asked again for the contact information and that he testified at the reinstatement hearing that he was still waiting for OLR to provide him with the information. The referee noted that after the evidentiary hearing, Attorney Sayaovong did take steps to find his former clients, and Attorney Sayaovong claimed those steps showed his "eagerness," "good faith," and "initiative" in finding them, despite his claim that he "did not have to do so," and that it would have been "well within his legal right to argue that his reliance [on OLR providing him with contact information] protected him from any assertions [of lack of diligence] by OLR." The referee said:

---

[1] The referee noted that after the evidentiary hearing, Attorney Sayaovong sent a check for the unpaid costs to OLR, but the check was returned because the 2014 public reprimand order stated that restitution must be paid prior to paying costs and restitution has not yet been paid.

This statement in itself illustrates a serious lack of understanding of, and attitude toward, the standards that are imposed upon members of the bar, and an unwillingness to act in conformity with the standards. In no way can the respondent's "reliance" on OLR be termed reasonable . . . . Throughout the process, the respondent has repeatedly failed to take responsibility or take any action, until pressed at his recent hearing, to locate or pay restitution to his former clients at anytime *prior* to becoming "incapacitated" or during the five years *after* his alleged period of incapacitation ended . . . . I find his inability, or unwillingness, to acknowledge this obligation in regard to his former clients reflects a lack of understanding of the standards imposed upon members of the bar.

¶12 The referee also found problematic Attorney Sayaovong's various statements to OLR during the course of the reinstatement proceeding. The referee noted that in his March 13, 2023 reinstatement affidavit, Attorney Sayaovong averred that he had fully complied with the terms of his suspension order, when in fact he had not done so. The referee also noted that in a May 31, 2023 response to OLR's reinstatement questionnaire, Attorney Sayaovong claimed he had paid the costs ordered in the 2015 suspension order and that he was "in the process of making restitution . . . ." The referee said, "these assertions were simply not true." The referee noted that in a post-hearing brief, Attorney Sayaovong termed those assertions as "mistakes" and blamed his lack of experience in the matter of reinstatement and his "neophyte status" in this area. The referee was not persuaded and said:

This argument is not convincing. The answers he provided were in response to straightforward, non-technical questions. The respondent *chose* to make these statements when authoring the affidavit and responding in writing to the questionnaire. None were misstatements made under the pressure of live questioning. At best, the first two assertions were made without taking the effort to conduct due diligence *in researching his own case*. At worst, the third statement is a false statement in violation of SCR 20:3.3(a)(1) and/or SCR 20:8.4(c). Whether caused by sloppiness or intentional misrepresentation, these statements illustrate yet another example of the respondent's understanding of, and attitude toward, what is expected of a member of the bar.

¶13    The referee said that, regrettably, Attorney Sayaovong cannot safely be recommended to the legal profession, courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts. The referee acknowledged that Attorney Sayaovong presented witnesses at the evidentiary hearing who spoke in favor of his reinstatement, and he also presented letters of recommendation. The referee found the witnesses and letters to be "credible, straightforward in their testimony, and well-meaning" and said he gave the letters and testimony great weight in regard to the opinions of Attorney Sayaovong's moral character and value to the community. Nonetheless, the referee said none of the witnesses or letter writers were mental health professionals, and only one had any interaction with the respondent in his capacity as an attorney. The referee further noted that none of the individuals were aware of the circumstances that led to Attorney Sayaovong's law license being suspended. For that reason, the referee found the testimony and letters to furnish very limited weight in regard to whether:  (1) Attorney Sayaovong was, as he claimed, clinically depressed to a degree that he could not function for several years; (2) whether he has now recovered from his clinical depression to a point that he can safely be recommended to return to the bar; and (3) whether he might revert to his previous state of "incapacitation" if his current life circumstances were to change. The referee also said that while he could find no reason to disbelieve Attorney Sayaovong's belief that he was, for some period of time, so stricken by depression over the failure of his first marriage that he was unable to function, nothing in the pre- or post-hearing submissions, or in his hearing testimony, answer those questions. The referee said this uncertainty contributes to Attorney Sayaovong's inability to meet his burden of demonstrating that he may safely be recommended to the legal profession, the courts, and the public. In addition the referee noted that Attorney Sayaovong "acknowledged that he never received a diagnosis of depression from any trained professional, has never received any treatment, has no knowledge or insight about what triggered his incapacity, and does not know what would happen if another intimate relationship failed."

¶14    The referee concluded by saying:

The respondent is asking for reinstatement of a professional license that was suspended, in his words, due to depression that was the "direct cause of his inability to work." This

license would allow him to hold in his hands the fortunes, well-being, and potentially even the lives of clients that seek his professional help, yet he has done nothing to seek professional help for himself to ensure, insofar as such a thing can be ensured, that he will not relapse and again abandon his legal practice and professional responsibilities. The respondent was, of course, not required by any law or Supreme Court Rule to seek out mental health treatment. However, when an individual bases his *entire case* for reinstatement of a professional license on such a diagnosis, something more than the testimony of lay witnesses should be required to support such an argument . . . .

Throughout the reinstatement process, the respondent has exhibited a tendency to not accept responsibility for his actions (or inactions), blame others for the position in which he now finds himself, and generally exhibit a lack of understanding regarding what is expected of a practicing member of the bar . . . . [T]he practice of law is not a passive enterprise, but the respondent often treats it as such, both before and after his alleged period of incapacitation. For this reason also I am not able to safely recommend him for reinstatement to the bar.

¶15 Attorney Sayaovong has appealed the referee's recommendation. He has also filed a number of motions, including a motion for a new evidentiary hearing and the appointment of a new referee and a motion for costs against OLR.

¶16 Attorney Sayaovong admits that he has not fully complied with the terms of the suspension order. He takes issue with the referee's conclusions of law that he has not fulfilled all of the other requirements for reinstatement. As to his failure to pay the restitution order in the 2014 public reprimand order, Attorney Sayaovong again says that he was relying on the fact that OLR was going to furnish him with contact information for his former clients and says "he was ready, willing and able to pay restitution when the Litigants were provided to him." As to his failure to pay the Waukesha County traffic tickets, Attorney Sayaovong says he was not even aware of the tickets until 2023 because they had occurred during the period of his depression, and he had completely forgotten about them. He says he understands his legal obligation to pay the tickets, and he has always admitted his mistakes when he makes them. He asks this court "to balance

this against the overwhelming evidence of the appellant's good moral character."

¶17    Attorney Sayaovong accuses the referee of a "total lack of impartiality and bias." He says that during the evidentiary hearing, the referee "began a line of questioning that was aggressive and pointed." He says the referee's pointed line of questioning clearly showed that the referee's opinion had been pre-formed prior to the hearing and his questioning was merely intended to affirm his conclusion. He accuses the referee of becoming the prosecutor rather than an impartial arbiter.

¶18    Attorney Sayaovong says the referee wrongly put emphasis on the fact that none of Attorney Sayaovong's character witnesses were health care professionals. Attorney Sayaovong admits that he has not sought professional care or diagnosis, but he says this ignores the fact that even a licensed psychiatrist or psychologist cannot guarantee against relapse. In order to show that he has turned his life around, Attorney Sayaovong says he has gotten remarried, welcomed his first child, bought his first home, and maintained stable and continuous employment. Attorney Sayaovong says:

> The Referee attacks the Appellant all throughout his Report as lacking the understanding necessary to be an attorney when he himself does not live up to those standards. Appellant motions the Court for a new hearing with a new Referee. If the Court denies this motion, Appellant motions the Court to make its decision de novo, without any deference to the Report of the Referee. Appellant motions the Court for costs against the Referee as it was a waste of time for him to prepare for the Hearing, to prepare his post-hearing briefs and wasted the time of his 5 witnesses.

¶19    The OLR argues that the referee correctly concluded that Attorney Sayaovong failed to demonstrate by clear, satisfactory, and convincing evidence that his resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest and that he has failed to substantiate the representations in his petition regarding all of the criteria set forth in SCR 22.29(4)(a)-(m), as required by SCR 22.305(3).

¶20    The OLR notes that a referee's findings of fact will be adopted unless they are clearly erroneous. In re Disciplinary Proceedings Against

Lister, 2010 WI 109, 329 Wis. 2d 289, 787 N.W.2d 820. Conclusions of law are reviewed de novo. In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The OLR also notes that as the factfinder, the referee has the authority to "draw any reasonable inferences from the evidence introduced." In re Disciplinary Proceedings Against Ruppelt, 2017 WI 80, ¶35, 377 Wis. 2d 441, 898 N.W.2d 473, citing SCR 22.16.

¶21    The OLR notes that Attorney Sayaovong does not directly dispute any findings of fact, and it argues that the referee's conclusions of law are supported by his findings of fact, which are not clearly erroneous. The OLR says the referee appropriately noted Attorney Sayaovong's repeated failure to take any action to locate or pay restitution to his former clients either before his alleged incapacity or during the five years after the alleged incapacity ended. It says this court should reject Attorney Sayaovong's claims that the referee was biased as meritless. As to Attorney Sayaovong's argument that this court should absolve him of failing to make any effort to locate the clients to whom he was ordered to pay restitution based on his good moral character, OLR says, "That's not how it works."

¶22    As to Attorney Sayaovong's failure to pay the traffic fines, OLR says even assuming Attorney Sayaovong was unable to remember from 2012 until 2023 that he had fines to pay, he was aware of the outstanding tickets no later than May 2023 because he acknowledged them in a May 2023 questionnaire response but still did not pay them until November 2023. The OLR says it was Attorney Sayaovong's "odd conclusion that he did not have to pay the tickets on a 'closed' case that led the referee to conclude that Sayaovong failed to meet his legal obligations." The OLR says based on Attorney Sayaovong's failure to meet his legal obligations to pay restitution and pay outstanding traffic fines, the referee correctly concluded that Attorney Sayaovong did not have a proper understanding of and attitude toward the standards imposed on Wisconsin attorneys.

¶23    The OLR asserts that the referee's conclusion that Attorney Sayaovong failed to substantiate that he could safely be recommended to the legal profession, the courts, and the public is supported by factual findings that are not clearly erroneous. The OLR says the referee appropriately cited to Attorney Sayaovong's lack of understanding about his alleged period of "debilitating" mental illness; his tendency to not accept responsibility for his actions or inactions and to blame others; and

his general lack of understanding about expectations of a practicing member of the bar.

¶24 The OLR argues that the referee correctly determined that Attorney Sayaovong's testimony and that of his character witnesses failed to address whether Attorney Sayaovong was, in fact, clinically depressed to a degree that he could not function for several years; whether he has recovered from his depression to the point that he can be safely recommended to the bar; or whether he might revert to his incapacitated state if his current life circumstances were to change. The OLR says although Attorney Sayaovong is not required to have sought medical attention to receive a formal diagnosis and treatment, his failure to do so signals that he has failed to take responsibility for his own mental health, just as he has failed to take responsibility for other aspects of his life. The OLR says in addition, Attorney Sayaovong's failure to seek professional help to determine why he was depressed, why he is no longer depressed, and how to prevent a relapse presents the possibility that he could unexpectedly relapse and abandon his clients, his practice, and his professional responsibilities.

¶25 The OLR urges this court to adopt the referee's findings of fact and conclusions of law and follow the referee's recommendation to deny Attorney Sayaovong's petition for reinstatement of his law license.

¶26 Attorney Sayaovong has not filed a reply brief.

¶27 As the OLR notes, this court will affirm a referee's findings of fact unless they are found to be clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Davison, 2010 WI 1, ¶19, 322 Wis. 2d 67, 777 N.W.2d 82.

¶28 Supreme Court Rule 22.31(1) provides that an attorney seeking reinstatement of his or her license has the burden of demonstrating all of the requirements set forth in SCR 22.29(4) by clear, satisfactory, and convincing evidence. Upon careful review of this matter, we adopt the referee's findings of fact and conclusions of law and agree that Attorney Sayaovong has failed to meet his burden of demonstrating that he fully complied with all of the terms of the public reprimand order or the order of suspension. We also agree with the referee that, at the present time, Attorney Sayaovong cannot safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in

general to aid in the administration of justice as a member of the bar and as an officer of the court. We also agree with the referee that at the present time Attorney Sayaovong has failed to demonstrate that his resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

¶29    Attorney Sayaovong admits that he did not comply with all of the terms of either the 2014 public reprimand order or the 2015 suspension order. He admits that he did not pay restitution but blames OLR for not telling him where to find his former clients even though he himself apparently made no effort to find them in the past decade. He blames the misconduct that led to his being disciplined in 2014 and 2015 on depression that was so severe that it resulted in years of incapacity but says he has fully recovered and is ready to resume the practice of law, even though he never sought medical diagnosis or treatment for his condition, and he chastises the referee for questioning his assurances and the testimony and letters of his character witnesses that he will not relapse.

¶30    As the referee noted, the practice of law is a solemn business in which clients, in a variety of ways, entrust their lives to their attorney. Although the record indicates that Attorney Sayaovong has taken strides to turn his life around, we share the referee's concern that, at the present time, he has failed to demonstrate that he has satisfied all of the requirements for resuming the practice of law.  As is our general practice, we find it appropriate to impose the full costs of this proceeding, $4,160.75, on Attorney Sayaovong.

¶31    IT IS ORDERED that Amoun Vang Sayaovong's petition for reinstatement of his license to practice law in Wisconsin is denied.

¶32    IT IS FURTHER ORDERED that all of Amoun Vang Sayaovong's pending motions are dismissed.

¶33    IT IS FURTHER ORDERED that within 60 days of the  date of this order, Amoun Vang Sayaovong shall pay to the Office of Lawyer Regulation the costs of this reinstatement proceeding.